### QUALITY CARE OF NASHVILLE and the Travelers Ins. Company, Defendants-Appellants,

v.

### Lina Mai WALLER, Plaintiff-Appellee.

Supreme Court of Tennessee.

July 30, 1979.

Michael J. Philbin, Nashville, for defendants-appellants.

Kathryn Behm Celauro, Nashville, for plaintiff-appellee.

### OPINION

HENRY F. TODD, Special Justice.

The defendants, Quality Care of Nashville and Travelers Insurance Companies have appealed from a judgment of the Trial Judge awarding to the plaintiff, an employee of Quality Care, benefits under the Workmen's Compensation Law.

On appeal, no issue is made as to the amount of the award. The only question raised by appellants is the applicability of the Workmen's Compensation Law to the injury of plaintiff under the special circumstances of the case.

The facts are not controverted. Plaintiff is a nurse's aide and is employed from time to time by Quality Care which furnishes nursing personnel to various health-care institutions. For this purpose, Quality Care maintains a registry or list of available personnel. As need requires and request is made, Quality Care assigns employees from its available list to work in such institutions. Such individuals are paid by Quality Care which in turn receives payment from the institution for the services of the individual.

Plaintiff was so registered with Quality Care on December 31, 1976, when she was notified by Quality Care to report to the Sunnyview Nursing Home for work. Plaintiff had worked for Quality Care before, but had not previously worked at Sunnyview. Quality Care instructed plaintiff as to the location of Sunnyview which was on premises which extended from 17th to 18th Avenues South at Horton Street. Said premises are surrounded by a wall with openings on 17th Avenue and 18th Avenue; however, Quality Care instructed plaintiff to approach the building by way of the 18th Avenue opening in the wall because the 17th Avenue opening was an exit. Plaintiff was also instructed to enter the building through a particular door.

Quality Care assumed no responsibility for plaintiff's transportation, and she was not paid for time spent en route to her assigned place of work (Sunnyview).

Weather conditions were such that snowy and icy conditions prevailed generally throughout the area.

Plaintiff drove her own automobile to the vicinity of Sunnyview, where she parked her car in the "lower lot" which was outside the wall. She proceeded on foot through the 18th Avenue entrance and across a parking lot on the premises toward the designated building entrance.

While walking across the parking lot toward the building entrance, plaintiff slipped on ice and fell, breaking her wrist. This injury is the subject of the present suit.

Plaintiff admits that her injury occurred before she reported for work and that she received nothing from Quality Care as a result of her activities on the day in question, i. e., going to the premises of Sunnyview where she fell.

In *Woods v. Warren*, Tenn.1977, 548 S.W.2d 651, this Court affirmed a judgment denying compensation under the following circumstances:

"Claimant was employed as a maid in the Warren House Apartments where she also resided.* Her normal *modus operandi* was that she would walk from her apartment to the manager's office or apartment, 'clock-in', and pick up a master key, her cleaning supplies, and a list of apartments to be cleaned. Her apartment was at the opposite end of the complex from the manager's office and apartment, which were located adjacent to each other. Normally she walked to her work, but, on occasions, she drove her automobile. No particular route was prescribed.

On the day of the accident she drove her automobile to work because it had been snowing and snow and ice covered the sidewalks. She parked near the office, in a space of her own selection, where she was permitted, but not required, to park. She emerged from her automobile, took a few steps along the icy sidewalk and fell, severely injuring her knee. All this occurred at approximately 8:00 o'clock, a. m. The sidewalk is owned by, and located upon, the premises of the apartment complex.

* (Residence within the apartment complex was not a condition of employment.)"

After discussing numerous authorities, this Court held:

". . . in order to avoid the application of the general rule of nonliability for an injury sustained en route to or from work, the employee must show that:

a. at the time of the injury he was using a route required or furnished by the employer; [*Travelers Indem. Co. v. Charvis*, 221 Tenn. 593, 428 S.W.2d 797] *Charvis, supra,* and such route was on the premises of the employer, *Little*; [*Little v. Johnson City Foundry etc.,* 158 Tenn. 102, 11 S.W.2d 690] *Camel Mfg. Co.*; [*Smith v. Camel Mfg. Co.,* 192 Tenn. 670, 241 S.W.2d 771] *Aluminum Co. of North America, supra,* [*Aluminum Co. of America v. Baker,* Tenn., 542 S.W.2d 819] and

b. · the use of the required route subjects the employee to a definite special hazard. *Camel Mfg. Co.*; *Charvis*; *Aluminum Co. of North America, supra,* or

c. that the risks of travel are directly incident to the employment itself. *Central Sur. & Ins. Corp.* [*Central Sur. & Ins. Corp. v. Court,* 162 Tenn. 477, 36 S.W.2d 907]; *Douglas, supra* [*Douglas v. Lewis Bros. Bakeries,* Tenn., 477 S.W.2d 202]

■ All of this is qualified by the fact that the 'premises' are that part of the property where the employee actually works or which he is required to use for ingress and egress. *Bennett,* [*Bennett v. Vanderbilt University,* 198 Tenn. 1, 277 S.W.2d 386] and *McKinney, supra,* [*McKinney v. Hardwich Clothes,* 217 Tenn. 457, 398 S.W.2d 265]

■ When we apply these rules to the instant case wherein the employee was unquestionably on the premises of her employer, we must reluctantly hold that there was no coverage under the act. She was not pursuing a required route, but was on a way of her own selection.

Assuming *arguendo* that the employee was, in effect, on a required route, coverage would not attach in view of the fact that her injury was not attributable to a definite *special* hazard. It is to be borne in mind that the phrase 'rising out of employment' refers to 'the origin of the injury', while 'in the course of employment' refers to 'time, place and circumstances' of the injury. *Knox v. Batson,* 217 Tenn. 620, 399 S.W.2d 765 (1966).

It takes a combination of these criteria to establish coverage under the act. Sec. 50–902, T.C.A. Therefore, the fact that the injury arises in the course of employment, standing alone, is insufficient. It must also rise out of the employment.

.     ·     ·     ·     .

We cannot in good conscience hold that general snowy and icy conditions were definite special hazards of employment in this case. We must hold that these conditions were common to the general public and not peculiar to the nature of the employment or to the conditions under which that employment was required to be performed."

Applying the rule just quoted, it may be said that plaintiff was (a) "using a route required or furnished by the employer." When injured, plaintiff was walking·across the premises of Sunnyview from the designated street entrance (on 18th Avenue) to the designated door in the building. Defendants insist that the door to the building was not "designated", but the uncontradicted testimony of plaintiff on this subject is as follows:

"She said, 'Go in down the steps after you get inside the wall*. There is a nurses station right there in front of the door, and ask' " (BE p. 40) *

* (Punctuation has been slightly altered to clarify meaning).

A picture in the record (Exhibit 10) shows the area in which plaintiff fell, including the door to the building which is below the level of the parking lot and steps leading down from the parking lot to the door.

Plaintiff admits that she had her choice of routes across the parking lot to the door of the building, but this is not deemed important, because directions to approach through a particular parking lot entrance to reach a particular doorway would presuppose that the employee would use the most direct route from the entrance to the door.

The relationship of Sunnyview to Quality Care was such that, for purposes of this appeal, the premises of Sunnyview must be considered the premises of the employer.

The next requirement (b) of *Woods v. Warren*, above, is that the required route subjects the employee to a definite, special hazard. Here, some difficulty is encountered, for it is uncontroverted that the snow and ice was general and widespread. Plaintiff testified of its presence at her home and en route. It is not shown that the route across the parking lot was any more hazardous than any other comparable route elsewhere in the city at the time. However, the parking lot was not used by the general public, but was for the use of employees and visitors to Sunnyview.

The alternate requirement (c) of *Woods v. Warren*, above, is that the risks of travel be incident to the employment itself. Plaintiff's uncontroverted testimony is that when defendant's supervisor requested her to report to Sunnyview, she responded that she would have to ascertain whether she could arrange transportation to Sunnyview; that she found a heavy snow on the ground; that the battery had been stolen from her automobile; that she obtained another battery; and that she finally telephoned defendant that she would be able to report for duty at the assigned time. Under these special circumstances, it may be said that, at the urgent request of defendant, plaintiff did attempt a journey from her home to Sunnyview under conditions known to both parties to be hazardous.

Thus, in summary, the facts of this case conform to requirement (a), may not conform to requirement (b), and may conform to requirement (c) of *Woods v. Warren.*

In the case of *Frazier v. Normak International*, Tenn.1978, 572 S.W.2d 650, the Trial Judge denied recovery; but this Court reversed and remanded (for determination of benefits) under the following stated circumstances:

"Mrs. Frazier slipped and fell on a sheet of ice . . . as she was going to work . . . . . The weather had been bad for several days; there was ice on the ground and it was snowing."

"The Normak plant . . . has four entrances, two on 17th Street and two on an alley which runs between the buildings in the warehouse complex. The alley is closed to the general public, but is used by three other companies for shipping and receiving. A gate which leads to the alley is locked nightly and reopened each morning for employees to enter. Mrs. Frazier had walked through the gate and was headed toward the building in which she worked when she fell. The gate was the only means of access to the building at the time Mrs. Frazier arrived."

Distinguishing the facts from those of *Woods v. Warren* and other cited cases, this Court observed:

" '[2] Mrs. Frazier· was on Normak's premises when she fell, not on a public way. The premises of an employer . . which he is required to use for ingress and egress.' *Bennett v. Vanderbilt University*, 198 Tenn. 1, 277 S.W.2d 386, 388 (1955)

[3] . . . Employees such as Mrs. Frazier were required to use the entrances off the alley. Under the facts, the alley was a required route for compensation purposes. See *Aluminum Co. of America v. Baker*, Tenn., 542 S.W.2d 819 (1976).

[4–6] . . . the hazard must be one to which the general public is not exposed. Normak urges us to follow the conclusion reached in *Woods v. Warren, supra*, that general snowy and icy conditions are not definite special hazards of employment. *Woods* is not controlling here, the icy condition was not a general one, the hazard created by the ice on the alley was peculiar to the personnel of Normak and the companies which used the alley. The general public is not allowed to enter the alley and even though three other companies used the alley, it is a part of Normak's premises for compensation purposes. *Mallette*, [*Mallette v. Mercury Outboard and Supply Co.*, 204 Tenn. 439, 321 S.W.2d 816] *supra*.

Normak was aware of the icy condition and its president knew that other employees had fallen. It had even salted the alley on prior occasions due to the hazardous conditions created by the weather.

In *Potts v. Heil-Quaker Corp.*, Tenn., 482 S.W.2d 135 (1972), an employee slipped and fell on a film of oil which had accumulated on his employer's premises. The oil was held to be a definite special hazard within the meaning of our case law. Similarly here the ice on the alley was a definite special hazard known to Normak. Access to the alley was restricted and employees arriving early were required to use entrances off the alley . . . ."

The above quotation clearly indicates that this Court has held that icy conditions on the required route across the employer's premises constitute a "special hazard" even though icy conditions prevail elsewhere and even though persons other than employees (but not the general public) are allowed to enter the area where the injury occurred.

The present case falls squarely within the rule just stated. Plaintiff was directed to a particular door where she would report and receive directions. The only route to that door was across the parking lot where she fell. The parking lot was therefore a "required route."

The fact that the parking lot is somewhat larger and offers a greater freedom of choice of precise route is immaterial. There is no evidence of a safe choice of route across the parking lot to the door. The entire lot was covered with ice.

Moreover, the parking lot was not "open to the public" in the sense that the general public was exposed to its dangers. The wall excluded the general public, and only persons having a legitimate business on the premises were invited therein. Thus, the ice which was a "general hazard" on the public streets became a "special hazard" on the premises where only employees and legitimate visitors were allowed.

The existence of the gate, locked at night, in the *Frazier* case and the open gateway through the wall in the present case is not deemed to be a material distinction between the *Frazier* case and the present case. Also, the actual knowledge of icy conditions in the *Frazier* case is not deemed to be a material distinction, since the parking lot in the present case was under the sole control of Sunnyview which was the "alter ego" of Quality Care.

Therefore, on the authority of *Frazier v. Normak*, the judgment of the trial judge is affirmed. Costs of this appeal are adjudged against appellants.

The cause is remanded to the trial court for further proceedings.

BROCK, C. J., and HENRY, FONES and HARBISON, JJ., concur.