Billy Todd ALLEN, Appellee,

v.

CONSOLIDATED ALUMINUM
CORPORATION, Appellant.

Supreme Court of Tennessee,
at Jackson.

March 25, 1985.

Wildman, Harrold, Allen, Dixson & McDonnell, Glen G. Reid, Thomas J. Walsh, Jr., Memphis, for appellant.

Hill, Boren & Associates, P.C., Gayden Drew IV, Jackson, for appellee.

OPINION

COOPER, Chief Justice.

This is an appeal by an employer from an award of worker's compensation benefits predicated on a finding by the trial judge that the employee is totally and permanently disabled from an occupational disease. Appellant insists there is no evidence to support the trial judge's finding that notice of the occupational disease was given "within the proper time," or his finding that appellee "sustained a permanently disabling disease [chronic obstructive pulmonary disease] as the result of exposure to pulmonary irritants in the course and scope of his employment with [appellant]." Appellant also insists the trial judge erred in failing to set-off against appellee's recovery "payments of disability benefits and medical expenses" by the employer under a disability plan fully funded by the employer and which expressly provides for such set-off.

Appellee was employed by appellant in 1957. Prior to beginning work, appellee was given a physical examination by a company designated physician and was found to be in good health. Appellee was assigned to and did work in various areas of the plant until 1980. At trial, appellee presented evidence that certain chemical substances were present in appellant's plant in varying amounts over the years. There was evidence that the environment was smoky, dusty, and contained abrasive particles, solvent vapors, and an oil mist. When tested, however, levels of contamination of air in the plant did not exceed limits prescribed by the Tennessee Occupational Safety and Health Act (TOSHA). However, a former operator of one of the major furnaces in the plant testified that the air in the plant was cleaner on the days a representative from TOSHA was expected as he and others in his work area were instructed by appellant to burn only hard, clean scrap on those days.

Appellee first began experiencing a problem with his breathing in the mid-1970s. His condition was first diagnosed as bronchitis. However, medical records from the office of Dr. William C. Story, who regularly examined and treated employees of appellant, indicate that he diagnosed appellee's condition as chronic obstructive pulmonary disease in early 1976. Appellee testified that Dr. Story did not tell him that he had chronic obstructive pulmonary disease but told him he had bronchitis and that it "could go into lung problems." Appellee was advised to and did stop smoking in 1978. As the result his breathing improved, indicating that his lung condition was not irreversible at that time.

In 1980–81, appellee was hospitalized several times for treatment for shortness of breath and congestion in the lungs. He was released to return to work in May, 1981. Before letting appellee return, however, appellant required that appellee be examined by Dr. Story.

On May 26, 1981, Dr. Story advised appellant, with a copy of the letter being sent appellee, that appellee suffered from severe chronic obstructive disease and "should be employed only in a work environment where he will not be exposed to

significant concentrations of dust, toxic fumes, heavy cigarette smoke, or other pulmonary irritants, such as chlorine, etc." There being no work station in appellant's plant where one or more of the irritants was not present, appellant refused to permit appellee to return to work.

■ Appellant filed a worker's compensation action on March 8, 1982, seeking to recover benefits for the disability resulting from the "chronic obstructive pulmonary disease," an irreversible lung disease. The appellant defended primarily on the grounds of lack of notice and medical causation. Both issues were found by the trial judge in favor of the appellee.

On the issue of notice, the trial judge found that the appellee "did not receive notice of his lung disorder until 1981, and notice and suit were filed within the proper time." The only significant event in 1981 was the May 26th letter to appellant from Dr. Story. The trial judge must have concluded that the letter was the first notification to the appellee of the diagnosis of his disease and that his lung condition was adversely affected by breathing irritants present in his work area; and, that the letter, coming from a company designated physician, satisfied appellee's duty to give notice to appellant of a possible claim under the Worker's Compensation Act.

■ The trial judge's finding that appellee was first informed in 1981 that he had chronic obstructive pulmonary disease is in accord with appellee's testimony. Dr. Story did not testify. As to whether the letter from Dr. Story was sufficient to constitute notice to the defendant, we note that the letter is similar in import to the physician's letter in *Stratton-Warren v. Parker*, 557 S.W.2d 494 (Tenn.1977), which was held to be sufficient notice to the employer of a possible worker's compensation claim. Both letters state the employee's diagnosis, and indicate that the employee should avoid the work environment. Appellant acted on the information in the letter and terminated appellee's employment since one or more of the contaminants adversely affecting appellee's health was present in the air at every work station in appellant's plant.

■ On the issue of medical causation, Dr. William D. Crook testified that appellee's exposure to pulmonary irritants during the 23 years he worked in appellant's plant was a significant factor in the causation of appellee's chronic obstructive pulmonary disease. He also testified that appellee was totally and permanently disabled by the disease. This testimony is sufficient to support the trial judge's finding on the issue of causation unless, as insisted by appellant, Dr. Crook's testimony was incompetent and had no probative value. Appellant argues that the foundation of Dr. Crook's testimony was inaccurate in that it was based in part on a summarization prepared by appellee's attorney of the TOSHA reports and reports from a certified industrial hygienist, who conducted surveys at the plant. We find the summarization to be reasonably accurate, although it apparently misled Dr. Crook into thinking that several chemicals were present in appellee's work environment in amounts in excess of TOSHA limits when, in fact, the reports did not so indicate. However, when this fact was called to Dr. Crook's attention, he indicated that his medical opinion was not based on the concentration of pulmonary irritants in appellee's work environment, but on the presence of the pulmonary irritants, whatever the concentration. Dr. Crook expressed the opinion that appellee was hypersensitive to the irritants and that a low exposure could make him ill. With this explanation, we agree with the trial judge that Dr. Crook's testimony was competent and had probative value.

Appellant provides two disability plans for its employees, a short-term plan (accident and sickness) and a long-term disability plan. Both plans are funded one hundred percent by appellant. In addition to the funding of payments under the plan, appellant pays a fee to Provident Insurance Company solely to administer the plans. The terms of both disability plans expressly provide that benefits paid thereunder are

to be offset against any worker's compensation payments due appellant for the same disability and for the same period of time.

Appellee received payments, one hundred percent funded by the company, for disability resulting from appellee's lung condition, the basis of the worker's compensation award in this case. For the first fifty-two weeks of his disability, appellee was paid $195.00 per week under the short-term plan. Thereafter, until it was determined that appellee's disability was compensable, appellee received $750.00 per month, less his Social Security benefits, under the long term disability plan. The net payment by appellant was $166.70 per month. Appellee's medical bills also were paid under the company disability plans.

The trial judge, without comment, entered a judgment awarding appellee worker's compensation benefits, without set-off, and ordered appellant to pay appellee "past medical bills in the aggregate amount of $13,137.88." These medical bills had been paid under the company disability plans. In our opinion, the appellant was entitled to a set-off equal to the disability payments it made under the company disability plans and also credit for the medical expenses paid under the plans. The contract under which appellee was paid disability payments so provided. *See Brown v. Western Electric Co.*, 646 S.W.2d 912 (1983); *American Bridge Div., U.S. Steel Corp. v. McClung*, 206 Tenn. 317, 333 S.W.2d 557 (1960). An employee cannot be allowed to claim benefits paid by his employer under a contract providing for health care and at the same time be allowed to disavow key provisions of the contract. If the employee were permitted to do so, the logical result would be for the employer to delay any and all disability payments until it could be judicially determined whether its liability to the employee was under the disability plan contract or under the Worker's Compensation Act. There would be no other way for the employer to avoid the possibility of having to pay twice for the same disability. This procedure would result in a hardship to the employee, and thus defeat the purpose of both the Worker's Compensation Act and the disability plan, as it would inevitably delay payments and thus deprive the employee of sustenance at the time of his greatest need.

The judgment of the trial court that appellee is totally and permanently disabled as the result of an occupational disease and is entitled to recover worker's compensation benefits is affirmed. The denial to the appellant of its contractual right of set-off of disability payments made and credit for medical expenses paid is reversed. The cause is remanded to the trial court for a determination of the set-off and for allowance of credit for medical expenses paid in behalf of appellee under the disability plan contract. Costs incident to the appeal will be paid one-half by appellant and one-half by appellee.

FONES, BROCK, HARBISON and DROWOTA, JJ., concur.