**Judy LOVELL, Plaintiff-Appellee,**

v.

**The METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, Tennessee, Through its agency, NASHVILLE ELECTRIC SERVICE, Defendant-Appellant.**

Supreme Court of Tennessee,
at Nashville.

Aug. 5, 1985.

Rehearing Denied Sept. 3, 1985.

Robert L. DeLaney, Nashville, for plaintiff-appellee.

William C. Moody, Nashville, for defendant-appellant.

## OPINION

BROCK, Justice.

In this worker's compensation case, the trial court awarded the plaintiff a judgment of $5,422.96. The defendant raises several issues upon appeal.

On the day of her injury, January 22, 1979, the plaintiff, Ms. Lovell, was employed in the meter department of the defendant, Nashville Electric Service (N.E.S.). On that morning ice and snow were on the ground in Nashville. Ms. Lovell drove to work and parked her car in a parking lot provided by N.E.S., lot five. She then proceeded to walk from her car to her work station. As she exited lot five, she slipped and fell on some ice and broke her ankle.

As a result of the accident, Ms. Lovell was unable to return to work until June 11, 1979, and she suffered a 20% permanent disability to the foot.

Lot five was the closest to the meter building of the only N.E.S. furnished lots in which Ms. Lovell was permitted to park. It was enclosed by a fence and had three exits. The exit at which Ms. Lovell fell was on the shortest route available from the parking lot to her work station. Members of the general public were not permitted to park in the lot.

The first two issues presented for review by N.E.S. are

(1) Whether "the plaintiff's claim for, and acceptance of, nonservice-connected disability benefits constitutes an election of remedies prohibiting her claim for worker's compensation benefits?" and

(2) Whether "the plaintiff is estopped from alleging that this accident arose out of and in the scope and course of her employment having presented a claim for nonservice-connected disability benefits?"

The record before us shows that the defenses of election of remedies and estoppel were not pled, as required by T.R.Civ.P. 8.03. Further, there is no indication in the record that either defense was asserted at trial. Those theories were raised for the first time on appeal and therefore will not be considered by this Court. *See, Lawrence v. Stanford,* Tenn., 655 S.W.2d 927 (1983); *East-Sevier City Utility District v. Wachovia Bank,* Tenn., 570 S.W.2d 850, 854 (1978); T.R.A.P. 36(a).

Next, the defendant contends that the proof does not support the trial court's finding that Ms. Lovell's injury arose out of and in the course of her employment.

■ N.E.S. argues that Ms. Lovell was not using a required route at the time of her injury because she was not required to park in the particular lot she chose, and was not required to follow the particular route she followed. Although N.E.S. did not demand that Ms. Lovell drive to work and park in an N.E.S. employee lot, it did furnish an area in which she was to park if she did do so. According to an N.E.S. memorandum distributed to employees, N.E.S.'s parking plan was designed not only for the convenience of the employees, but also "for greater operating efficiency of N.E.S. for the benefit of [its] 200,000 customers." N.E.S. restricted her to three lots. She parked in the lot closest to the area where she performed her work and took the most direct route to the work area. We are of the opinion that N.E.S. sufficiently restricted the area which was available to Ms. Lovell to use as a route to her work station to render the route she was using when she was injured a route "required or furnished by the employer."

We are also of the opinion that the route taken by Ms. Lovell was on the premises of the employer. The injury did not occur on the part of the property where Ms. Lovell actually worked; however, it occurred on the most direct route between her work station and the closest of the three employer-furnished parking lots to which her parking was restricted. As a result, we find that the injury occurred on a part of the N.E.S. property which she was required to use for ingress and egress.

In *Quality Care of Nashville v. Waller,* Tenn., 584 S.W.2d 779 (1979), we upheld the trial court's award of benefits to the plaintiff who had suffered an injury when she slipped on ice and fell while walking across her temporary employer's parking lot to a designated door. We stated:

"Plaintiff admits that she had her choice of routes across the parking lot to the door of the building, but this is not deemed important, because directions to approach through a particular parking lot entrance to reach a particular doorway would presuppose that the employee would use the most direct route from the entrance to the door." 584 S.W.2d at 781.

Similarly, we think that the furnishing of an employee-only parking lot near the meter building and the authorization of Ms. Lovell to park in the lot would presuppose

her use of the most direct route available from the parking lot to the meter building.

We think that this issue is controlled by our decision in *Aluminum Company of America v. Baker,* Tenn., 542 S.W.2d 819 (1976). There appears to be no important difference between the facts in the *Baker* case and those in the instant case. In *Baker* the employee, while walking through a parking lot maintained by the employer for its employees, stepped in a hole, fell and injured his left knee. Pertinent portions of the opinion in *Baker* are as follows:

"... It should be noted that 'premises' of the appellant includes the part of appellant's property which the appellee is required to use for ingress and egress. (Citation omitted.) It should also be noted that:

' "The required route" rule is not so inflexible as to allow an employer to designate exact geographic limitations to a particular route in order to escape limited liability for hazards existing a few feet on either side of the given route. Nor is it intended to allow an employer to avoid liability by granting an employee discretion of movement through an area restricted by boundaries. The mere fact the employee has a choice of paths within a reasonably defined area, a variance of which may or may not subject him to "special hazards" is insufficient to take him out of the required route rule.' *Potts v. Heil-Quaker-Corporation, supra,* [482 S.W.2d 135] at 138.

\* \* \* \* \* \*

"We think the plant location and the concomitant unavailability of public parking areas for ALCOA's employees, the fact that ALCOA built and maintains parking lots for its employees, the location of the parking lots, the restricted access to the parking lots, and the fact that an employee has to pass through the parking lots to gain access to the plant through the guard gate, has the practical effect of making the parking lots a part of the premises of ALCOA which the employees are required to use for ingress and egress. Further, we think the evidence supports the conclusion of the trial judge that the use of the north parking lot subjected appellee to a special hazard known to ALCOA the very hazard that caused the employee's fall." 542 S.W.2d at 821.

*Accord: Kellwood Company v. Gibson,* Tenn., 581 S.W.2d 645 (1979): *Frazier v. Normak International,* Tenn., 572 S.W.2d 650 (1978).

N.E.S. also argues that the "required or furnished, special hazard" exception has not been met because the proof establishes that snow and ice were generalized conditions in the Nashville area on the day of Ms. Lovell's injury and thus the ice on which she slipped did not constitute a definite special hazard. We disagree. We have previously held that snow and ice on a required or furnished route on an employer's premises constitutes a definite special hazard if the area where the injury occurred is not open to the general public, even though such snowy and icy conditions are prevalent throughout the area. *See Quality Care, supra,* at 782–83; *Frazier v. Normak International,* Tenn., *supra,* at 652 (1978). Such is the case before us. The trial court correctly found that Ms. Lovell's injury was compensable.

■ N.E.S. next argues that the trial court erred in denying it a set-off for amounts it paid to Ms. Lovell under its nonservice-connected disability plan. N.E.S. is self-insured for its nonservice-connected disability benefit program; thus, 100% of the nonservice-connected benefits were provided by N.E.S. For that reason, we hold that N.E.S. is entitled to a set-off for these amounts which it paid to Ms. Lovell due to her inability to work.

In the recent case of *Allen v. Consolidated Aluminum Corp.,* Tenn., 688 S.W.2d 64, 67 (1985), an employer made payments to its employee under a disability plan. The plan was 100% funded by the employer. In addition, the payments were made under a contract which provided that any benefits paid under the disability plan

were to be offset against any worker's compensation payments due to the employee for the same disability and for the same period of time. We reversed the trial court's denial of a set-off for the employer against the plaintiff's worker's compensation award, stating:

"An employee cannot be allowed to claim benefits paid by his employer under a contract providing for health care and at the same time be allowed to disavow key provisions of the contract. If the employee were permitted to do so, the logical result would be for the employer to delay any and all disability payments until it could be judicially determined whether its liability to the employee was under the disability plan contract or under the Worker's Compensation Act. There would be no other way for the employer to avoid the possibility of having to pay twice for the same disability. This procedure would result in a hardship to the employee, and thus defeat the purpose of both the Worker's Compensation Act and the disability plan, as it would inevitably delay payments and thus deprive the employee of sustenance at the time of his greatest need." 688 S.W.2d at 67.

Although in this case there is no evidence of a contractual provision relating to set-off, the considerations underlying the decision in *Allen*, reflected in the text quoted above, apply in the instant case. In both this case and *Allen*, the employer was self-insured. If an employer is not allowed a set-off against worker's compensation judgments for benefits paid by it under self-funded disability plans, the hardship to the employee which we sought to prevent in *Allen* would result.

The defendant also argues that the trial court's order, submitted by counsel for Ms. Lovell, does not reflect the trial court's ruling. We find it unnecessary to decide whether the trial court entered an order which did not reflect its ruling, because we find that the calculation of damages as reflected by the final order was erroneous in any event.

The trial court's order granted (a) permanent partial disability benefits in the amount of $2,500.00; (b) temporary total disability benefits for the period January 22, 1979, to June 11, 1979, in the amount of $2,200.96; (c) $571.52, representing the difference between the amount of Ms. Lovell's regular pay and the amount paid to her under the disability plan, and (d) $150.48 for 3½ days of annual leave which she took before she began receiving non-service-connected disability benefits.

The permanent partial disability benefits appear to have been correctly calculated and Ms. Lovell is entitled to the amount awarded. However, as to temporary total disability she is entitled to compensation for the period beginning January 22, 1979, the day of her injury, and ending on June 10, 1979, the day before she returned to work, a period of 19 weeks and 6 days, at a rate of $100.00 per week. The amount of temporary total disability benefits to which Ms. Lovell is entitled is thus $1,985.71.

■ We find no legal basis for the award of $571.52, and therefore we hold that the trial court erred in awarding that amount. We further hold that the trial court erred in granting recovery for 3½ days of annual leave. As a benefit of her employment, Ms. Lovell received full pay for those days. She is not entitled to recover again in this suit.

Finally, as we have indicated above, N.E.S. is entitled to a set-off for the amount it paid under the nonservice-connected disability plan. The amount of the set-off should not, however, include payments made by N.E.S. for Ms. Lovell's medical expenses, because she did not seek to recover and did not recover reimbursement for her medical expenses in this suit. The amount of set-off also should not include amounts paid to her for sick leave and annual leave under her employment contract. Because we are unable to determine on the record before us the amount of the credit which N.E.S. should receive, we remand this case to the trial court for such a determination.

In summary, we affirm the trial court's holding that the plaintiff sustained a compensable injury. However, we hold that the defendant is entitled to a set-off and we remand the case for a calculation of the proper amount of such credit and for a redetermination of the amount of compensation due to the plaintiff.

The judgment of the trial court is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed ½ against the appellant and ½ against the appellee.

COOPER, C.J., and FONES, HARBISON, and DROWOTA, JJ., concur.