Doris F. WILLIAMS, Plaintiff/Appellee,

v.

DELVAN DELTA, INC. and Liberty
Mutual Insurance Company,
Defendants/Appellants.

Supreme Court of Tennessee,
at Jackson.

May 31, 1988.

Charles H. Farmer, Spragins, Barnett, Guy, Farmer & Cobb, Jackson, for defendants/appellants.

C. Mark Ramsey, Huntingdon, for plaintiff/appellee.

## OPINION

FONES, Justice.

In this worker's compensation case the chancellor found that plaintiff, Doris F. Williams, was totally and permanently disabled as the result of injuries she received in a work-related accident. The chancellor awarded plaintiff past and future medical expenses, and permanent disability benefits. He then ordered the disability benefits commuted to a lump-sum award. On appeal, defendant, Delvan Delta Inc., and its worker's compensation insurance carrier, Liberty Mutual Insurance Company, present four issues. Whether the chancellor properly found defendants liable for those past medical expenses related to plaintiff's heart condition? Whether the chancellor properly awarded plaintiff medical expenses not proven by expert medical testimony to be reasonable and necessary? Whether defendants should have received a set-off for voluntary, non-contractual payments made to plaintiff following her accident? Whether the chancellor erred by commuting plaintiff's compensation award to a lump-sum?

Plaintiff, a forty-three-year-old woman, was injured on 19 April 1983, while performing her duties as a shipping and receiving supervisor for defendant at its Lexington, Tennessee facility. When plaintiff attempted to place a heavy box above her head, she felt her back "pull". Then, her back began to hurt. Plaintiff reported the incident to her employer and consulted Dr. Robert H. Dunnebacke. Dr. Dunnebacke treated plaintiff with medication. When the medication did not ease the pain, Dr.

Dunnebacke referred plaintiff to Dr. George Woods. Dr. Woods admitted plaintiff to the hospital for diagnostic tests and treatment for her back pain. During this hospitalization, nerve blocks were performed on plaintiff to relieve her pain. The morning after this nerve block procedure was performed, plaintiff suffered an incident of ventricular tachycardia (irregular heartbeat). Although plaintiff recovered completely from this incident, she continued to experience pain in her back. Dr. Woods continued treating plaintiff with medication until October 1984.

In February 1984, plaintiff consulted Dr. Robert J. Barnett, an orthopedic surgeon. Dr. Barnett performed fusion surgery on plaintiff in April 1985 in an attempt to relieve plaintiff's pain. While in the recovery room following this surgery, plaintiff had another incident of irregular heartbeat. Her heartbeat returned to normal after treatment with Lidocaine. Despite this fusion surgery, plaintiff continued to have pain in her back. Dr. Barnett then placed plaintiff in a back brace and treated her symptoms with medication.

Plaintiff consulted Dr. Thomas J. Huber in August 1986. Dr. Huber performed additional tests on plaintiff and determined that additional surgery would not aid her. Dr. Huber continued treating plaintiff with medication, and testified that plaintiff will continue to need medication for her pain.

Plaintiff testified that she is no longer able to perform any gainful employment because of her back injury. She also stated that she is unable to do housework, work in her garden, or participate in active sports. In addition, plaintiff testified that she is unable to sit without pain. Dr. Barnett opined that as a result of her injury plaintiff has a 30% permanent partial disability to the body as a whole. He also stated that plaintiff could not be employed in a factory environment. Dr. Barnett stated that plaintiff is unable to do any appreciable lifting, and that she could not sit or stand long enough to hold down an eight hour job. Dr. Huber opined that plaintiff has a 20% permanent partial disability to the body as a whole. Dr. Huber

also testified that he does not believe plaintiff could work on a regular basis because of her pain problem.

The chancellor found plaintiff permanently and totally disabled as a result of her back injury, and he awarded her permanent total disability benefits. He found defendants liable for all of plaintiff's past and future medical expenses related to this injury. He also found defendants liable for plaintiff's past medical expenses for her heart condition, specifically excluding future medical expenses related to this problem. The chancellor ordered defendants to reimburse plaintiff for medication expenses and travel expenses she had incurred. After a hearing, the chancellor ordered the permanent disability award commuted to a lump-sum award of $46,327.82.

As this cause of action arose prior to 1 July 1985, a review by this Court of the findings of fact made by the trial court is governed by the material evidence rule. *Alley v. Consolidation Coal Co.*, 699 S.W. 2d 147 (Tenn.1985).

(1). Whether the chancellor properly found defendants liable for the past medical expenses related to plaintiff's heart condition?

Defendants contend that they are not liable for any medical expenses related to plaintiff's heart condition because the chancellor found plaintiff's heart condition to be a pre-existing condition, unrelated to plaintiff's on-the-job injury. Plaintiff argues that the chancellor found that the stress from the treatment for her back injury aggravated her pre-existing heart condition, and therefore he properly concluded that the past medical expenses were related to the back condition.

This Court addressed the question of whether an employee may recover worker's compensation benefits for the aggravation of pre-existing condition by medical treatment for a work related injury in *Elmore's Variety Store v. White*, 553 S.W.2d 350 (Tenn.1977). In that case the employee sustained a puncture wound in a work-related accident. While a dressing on the wound was being changed at the doctor's office, the employee became faint and nauseated. She then developed a severe headache. Subsequently the employee was paralyzed by a stroke. It was established that the employee's symptoms were caused by the rupture of a pre-existing aneurism in employee's brain, while being treated at the office. Medical testimony showed that the rupture of the aneurism was the result of stress or excitement caused by the treatment of the work-related injury. This Court allowed the employee to recover for the permanent disability caused by the stroke because the material evidence supported the causal connection between the treatment for the work-related injury and the aggravation of the pre-existing condition. *Id.* at 352.

In this case, plaintiff had two episodes of cardiac problems while undergoing treatment for her back injury. The first incident occurred while plaintiff was recovering from the nerve block procedure performed by Dr. Woods. The second incident occurred while plaintiff was in the recovery room following the fusion surgery performed by Dr. Barnett. Dr. James G. Porterfield, a cardiologist who examined plaintiff after the first incident, testified about the first incident. He stated that plaintiff's abnormal heart rhythm was the result of a low serum potassium level possibly caused by a diuretic plaintiff was taking for an unknown reason prior to her admission to the hospital. Dr. Porterfield conceded that plaintiff's serum potassium level was normal at the time she was admitted to the hospital. However, Dr. Porterfield stated that he was unable to link the incident of irregular heartbeat to the treatment plaintiff received for her back injury.

Dr. Barnett, the orthopedic surgeon who performed the fusion surgery, testified about the second cardiac incident. This incident occurred while plaintiff was in the recovery room following the fusion surgery. After the surgery, plaintiff developed an irregular heartbeat which returned to normal after treatment with medication. Dr. Barnett testified that he believes stress from the operation could have been a factor in the two incidents. He stated that although he did not believe the incidents of

irregular heartbeat were related to the original back injury, he believed plaintiff has a predisposition for irregular heartbeat that manifests itself in stressful situations such as operations.

As noted earlier, the chancellor found the incidents of irregular heartbeat to be causally related to the stress from the treatments for plaintiff's back injury. We cannot say that this finding is not supported by material evidence. As these treatments were for a work-related injury, the stress caused is directly attributable to plaintiff's employment. *See Helton v. Food Lion, Inc.*, 738 S.W.2d 626, 629 (Tenn.1987). Therefore, the chancellor did not err in finding defendants liable for the past medical expenses related to plaintiff's heart condition. *Lawrence County Highway Dept. v. Hardiman*, 531 S.W.2d 792, 795 (Tenn. 1975).

■■■ (2). Whether the chancellor properly awarded plaintiff medical expenses not proven by expert medical testimony to be reasonable and necessary?

Defendants assert that the trial judge erred in awarding recovery for physicians fees and other medical expenses that plaintiff failed to prove were necessary and reasonable. Defendants rely upon *Phillips v. Fleetguard Div. of Cummins Eng. Co.*, 480 S.W.2d 528 (Tenn.1972) without recognition that the Court overruled *Phillips* in *Russell v. Genesco, Inc.*, 651 S.W.2d 206 (Tenn.1983) to the extent that medical treatment by physicians designated by the employer or physicians selected by the employer's doctors are presumed necessary and reasonable.

The record in this case is silent as to whether or not any of the physicians that treated plaintiff were designated by the employer or plaintiff was referred to by a designated physician. It is elementary that where an employee seeks the advantage of the presumption created in *Russell*, the employee has the burden of showing that the treating physicians were designated by the employer or doctors selected by a designated physician.

In this case, when plaintiff presented her numerous medical bills, defendants objected on the ground that plaintiff was not competent to prove that those charges were necessary and reasonable. However, under *Russell*, plaintiff was entitled to show that she had incurred those medical expenses if they were incurred at the instance of the employer's doctors or doctors to whom she had been referred. Thus defendants' objection was not made on the proper ground.

If defendants had objected on the proper ground, to-wit: that plaintiff had failed to show whether the treating physicians were designated or selected by designated physicians, evidence could have been presented for an appropriate resolution of those issues. Under these circumstances, defendants have waived consideration of this issue. *See Layne v. Speight*, 529 S.W.2d 209 (Tenn.1975) and *Bass & Co. v. Parker*, 208 Tenn. 38, 343 S.W.2d 879 (1961).

However, the medical expenses allowed by the trial judge are extensive and appear to involve items that may or may not have been incurred at the instance of doctors for whom the employer is liable under the statutes and case law. For that reason, we remand this case for further proof directed to the validity of all the medical expenses except those of Doctors Barnett and Huber, conceded by defendants to be appropriate.

■■■ (3). Whether defendants should have received a set-off for voluntary non-contractual payments made to plaintiff following her accident?

Defendants contend that the chancellor erred by awarding worker's compensation benefits to plaintiff without granting defendants a set-off for payments made to plaintiff following her accident. According to defendants' witness, Mr. Mark Bartel, defendants made periodic payments totaling $15,551.79 to plaintiff following the accident. Mr. Bartel testified that these payments were a voluntary non-contractual obligation assumed by defendants. Mr. Bartel stated that the purpose of these payments was to make up the difference between "what her paycheck was and what her disability income was."

The issue of set-off for payments made by an employer against a worker's compensation award has been discussed by this Court in several recent cases. In the first case, *Brown v. Western Electric Co.*, 646 S.W.2d 912 (Tenn.1983), the employer was denied a set-off for voluntary payments made to an injured employee. In *Brown*, the employer claimed it was entitled to a credit equivalent to the employee's regular earnings made while the employee was disabled. This Court held that absent a contract or statute allowing set-off, such payments would be deemed voluntary and set-off would not be allowed. *Id.* at 912.

In the next set-off case, *Allen v. Consolidated Aluminum Corp.*, 688 S.W.2d 64 (Tenn.1985), the employer was allowed a set-off for payments made to an injured employee. In *Allen*, the employee received disability payments and had his medical bills paid by two disability plans funded by the company. The terms of these disability plans expressly provided that benefits paid by the plans were to be off-set against any worker's compensation award for the same disability. *Id.* at 67. This Court noted that the purpose of both the Workers' Compensation Act and the disability plans for the employee was to provide sustenance to the employee in his time of need. This shared purpose would be defeated if the employee was allowed to disavow the set-off provisions of the disability plans. We noted that the employer to avoid a double recovery by the employee would be forced to delay disability payments until the basis of his liability—either under the Workers' Compensation Act or the disability plan—was judicially established. We concluded that this delay would cause an inevitable hardship upon the injured employee, and determined that the remedial purpose of the Tennessee Workers' Compensation Act authorized a set-off in *Allen*. *Id.*

In the final case on set-off, *Lovell v. Metropolitan Government*, 696 S.W.2d 2 (Tenn.1985), the employer was granted a set-off against his worker's compensation liability for payments made by the employer's non-service-connected disability plan. No evidence of a contractual provision relative to set-off was presented at the trial.

Despite this absence, this Court determined that the reasons expressed in *Allen* applied equally to *Lovell* and held the set-off to be proper.

In the present case, there is no evidence of any provision in the employer's disability plan that provides for a set-off of payments against the employer's worker's compensation liability. The testimony presented by defendants' own witness clearly shows that the payments made by defendants were designed to *supplement* the worker's compensation benefits received by the injured employee. Because these payments were designed to supplement the worker's compensation benefits, there is no danger that the employer would delay making these payments if a set-off was denied herein. Therefore, this case is distinguishable from *Allen* and *Lovell*. Because allowance of a set-off would not further the remedial purpose of the Workers' Compensation Act, the denial of a set-off by the chancellor was proper.

(4). Whether the chancellor erred by commuting plaintiff's compensation award to a lump-sum?

The trial judge granted plaintiff's motion for a lump-sum award of her worker's compensation benefits after a hearing. At that hearing plaintiff testified about her need for a lump-sum award. She stated that in 1986 her husband was laid off from his job, and the family had to move to Gallatin, Tennessee, to allow him to obtain another job. After moving to Gallatin, the family bought a house utilizing plaintiff's lump-sum award of her social security benefits as a down payment. Plaintiff stated that they had been unable to sell their house in Lexington and are currently paying two house notes—$200 for the Lexington house and $640 for the Gallatin house. Plaintiff stated that she wanted the lump-sum award to reduce the principal on the loan on the Gallatin house. In addition, plaintiff stated that her son needs about $800 in dental work, and she owes $150 for dental work already performed on her son. Plaintiff also stated that she needs a new refrigerator and television, and that her husband needs new glasses. She testified that the

family had to trade in their van for a new car because she was unable to ride in the van comfortably. The monthly payment on this new car is $200. Plaintiff concluded that because for these reasons, she needs "more than $18,000 or $19,000." Based upon the foregoing, the chancellor ordered plaintiff's compensation award commuted to a lump-sum award of $46,327.82. Defendant contends that this order was erroneous because plaintiff has not demonstrated that commutation of the benefits is in her best interest.

■ The general purpose of the Tennessee Workers' Compensation Act is to provide injured workers with periodic payments "as a substitute, and in a manner consistent with, the employee's regular wage." *Van Hooser v. Mueller Co.*, 741 S.W.2d 329, 330 (Tenn.1987). Lump-sum awards of worker's compensation benefits are an exception to this purpose authorized by T.C.A. § 50–6–229. Under this section, the chancellor in the exercise of his informed discretion may authorize lump-sum awards in exceptional situations. *Id.; Fowler v. Consolidated Aluminum Corp.*, 665 S.W.2d 713, 714 (Tenn.1984).

> Before the trial judge decides to commute an award he ought to be able to ascribe a good reason therefore arising from the evidence produced before him. The employee bears the burden of showing that it is in his best interest that the award be commuted rather than paid in installments. The reason commonly advanced for commuting the award is that the plaintiff has some special need for receiving the money in a lump-sum....

*Fowler v. Consolidated Aluminum Corp., supra* at 715.

■ In the present case the chancellor found that plaintiff was entitled to a lump-sum award of $46,327.82. Of this amount, $18,360 represents permanent total disability benefits which were accrued but unpaid at the time of the hearing. The remaining $27,967.82 is the present value of the permanent total disability benefits to be paid periodically in the future. Because the lump-sum award of the past due benefits is always proper, our review will focus on whether the lump-sum award of $27,967.82 for the future disability benefits is proper.

■ According to plaintiff's testimony at the hearing, she requires over $19,000 to satisfy her present needs. The $18,360 lump-sum award for past benefits should satisfy most of plaintiff's needs. In addition, one of plaintiff's present monthly expenses, the Lexington house note, should cease when the house is sold. The only justification provided by plaintiff for the additional lump-sum award of $27,967.82 is plaintiff's desire to reduce the principal owed on the loan for the Gallatin home. We cannot say on this record that plaintiff has satisfied her burden of showing a good reason or a special need that justifies a lump-sum award of the future permanent disability benefits. Therefore, we must conclude that the chancellor abused his discretion when he ordered the lump-sum award of plaintiff's future permanent disability benefits.

The judgment of the trial court is modified with respect to the lump-sum award and the medical expenses as provided herein and in all other respects affirmed. Plaintiff's motion for damages for frivolous appeal is denied. Costs are adjudged against defendants.

HARBISON, C.J., and COOPER, DROWOTA and O'BRIEN, JJ., concur.