**Lisa SIMPSON, Plaintiff/Appellee,**

v.

**FRONTIER COMMUNITY CREDIT UNION, Defendant/Appellant.**

Supreme Court of Tennessee,
at Nashville.

May 6, 1991.

William B. Vest, Hendersonville, for defendant/appellant.

E. Guy Holliman, Frank D. Farrar, Lafayette, for plaintiff/appellee.

## OPINION

ANDERSON, Justice.

In this worker's compensation action, the Chancellor awarded the employee tempo-rary total and permanent partial disability benefits, and past and future medical expenses, but allowed a set-off to the employer for benefits paid by a company disability insurance policy. Both parties appeal. The employer complains that the Chancellor erred by permitting the re-opening of the proof to allow proof of worker's compensation coverage, and by awarding past and future medical expenses. The employee asserts that the Chancellor erred by granting the defendant a set-off against the temporary total disability award, for benefits paid by the company's disability policy, and by limiting the attorney's fee to only 20 percent of the permanent disability award.

For the reasons set out below, we reverse the Chancellor's judgment on the set-off issue, but affirm his judgment in all other respects.

### FACTS

The plaintiff, Lisa Simpson, age 32, is a high school graduate who had worked as a teller at the Farmers & Merchants Bank for seven and one-half years. She began working as a teller for the defendant, Frontier Community Credit Union ("Frontier"), approximately one year before she was injured, performing bookkeeping, filing, and typing tasks. On June 9, 1986, she came in the rear door of Frontier's office with her arms full, used her hip to close the door, and in so doing, injured her hip and back. The injury was reported to her supervisor, and she worked the rest of that day and all of the next. After advising her employer of her intentions, she left work on the second day after the injury to see Dr. Thomas. Frontier had no list of approved physicians posted, as required by law, nor did they instruct her to see a specific doctor or object to her choice of a doctor.

Dr. Thomas first treated the plaintiff conservatively with medication. After a time, he referred her to Dr. Callahan, a neurologist, who referred her to Dr. Schoettle, a neurological surgeon, who saw her in August of 1986 and diagnosed her problem as a herniated disc resulting from

her occupational injury. Dr. Schoettle continued conservative treatment with medication, and prescribed physical therapy. The plaintiff incurred medical expenses for drugs, tests, physical therapy, and outpatient hospitalization ordered by her physician. She was finally released to return to work on March 6, 1989, with lifting restrictions.

■ Our review of findings of fact by the trial court is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e); *Lollar v. Wal–Mart Stores, Inc.,* 767 S.W.2d 143 (Tenn.1989). "This standard differs from that previously provided and requires this Court to weigh in more depth factual findings and conclusions of trial judges in workers' compensation cases." *Humphrey v. David Witherspoon, Inc.,* 734 S.W.2d 315 (Tenn.1987). Under the material evidence rule, this Court was required to accept the findings of fact of trial courts if those findings were supported by any material evidence. *Anderson v. Dean Truck Line, Inc.,* 682 S.W.2d 900, 901–02 (Tenn.1984). However, we are no longer bound by the findings of the trial court in these cases and now determine where the preponderance of the evidence lies. *Corcoran v. Foster Auto GMC, Inc.,* 746 S.W.2d 452, 456 (Tenn.1988).

### RE–OPENING OF PLAINTIFF'S PROOF

■ Frontier first argues the Chancellor erred in re-opening the proof at trial, after the plaintiff rested, to allow proof that Frontier was covered for worker's compensation under the statute.

The first paragraph of the plaintiff's complaint alleges: "This is a matter by virtue of the worker's compensation statutes for the State of Tennessee and for all benefits thereunder." To this complaint, Frontier filed an answer which said: "Paragraph 1 of the complaint is neither admitted nor denied, therefore, strict proof of the allegations contained therein is demanded."

The plaintiff testified on direct examination that when she began working at Frontier there were four employees. Frontier did not cross-examine. At the end of plaintiff's proof, Frontier made a motion to dismiss based upon the plaintiff's failure to provide written notice of an injury, which was overruled. Frontier put on no proof, and it wasn't until argument began that Frontier argued there was no proof of coverage and that the pleadings had raised the issue. The Chancellor commented:

> I have some questions about that kind of answer ... a complaint is stating that this is a matter by virtue of the worker's compensation statutes for the State of Tennessee and benefits thereunder, and defendant who ought to know whether or not it is, has said we neither admit nor deny that that's correct and we just demand strict proof.

The Chancellor then held that it was within his discretion to allow the proof to be re-opened, and he did so. The plaintiff testified there were eight employees working for Frontier at the time of the injury, and the Chancellor found Frontier was subject to the Worker's Compensation Act.

■ Permitting additional proof, after a party has announced that proof is closed, is within the discretion of the trial court, and unless it appears that its action in that regard has permitted injustice, its exercise of discretion will not be disturbed on appeal. *State v. Bell,* 690 S.W.2d 879 (Tenn. Crim.App.1985).

> It is within the discretion of the trial judge to decide whether to reopen the proof for further evidence, and the decision of the trial judge thereon will not be set aside unless there is a showing that an injustice has been done. *Higgins v. Steide,* 47 Tenn.App. 42, 335 S.W.2d 533 (1959)....

*Id.* at 882.

In *Bellisomi v. Kenny,* 206 S.W.2d 787 (Tenn.1947), this Court discussed the reason a trial judge has discretion to decide when a nonsuit motion should be allowed:

> This rule, in our opinion, was adopted to promote the discretion of the trial

judge in directing the course of a trial. The ascertainment of the truth and a just determination of the respective rights of the parties insofar as this can be accomplished consistent with rules essential to the administration of justice, is the purpose of all judicial inquiry.... [T]he function of a judge of a law court is not limited to that of a mere referee or umpire between contestants in a game of skill. Upon the contrary, in many respects he has wide discretion to be exercised in the promotion of the purpose for which the trial is had....

*Id.* at 788.

As we said in *Barker v. Heekin Can Co.,* 804 S.W.2d 442 (Tenn.1991):

The Rules of Civil Procedure are not intended as a trap for the unwary, but as a means of "secur[ing] the just, speedy and inexpensive determination of every action." Rule 1, T.R.C.P.

*Id.* at 444. We think the Chancellor's action promoted justice rather than injustice, particularly in view of the nature of Frontier's pleadings. Frontier neither admitted nor denied coverage under the Worker's Compensation Act when it must have known it had eight employees on the date of the injury and therefore had coverage. We hold therefore that the Chancellor did not abuse his discretion in re-opening the proof in this case in order to ascertain the truth and properly administer justice.

### NECESSARY AND REASONABLE MEDIAL EXPENSES

■ Next, Frontier argues that the plaintiff failed to prove the reasonableness and necessity of the medical expenses. Tennessee Code Annotated, § 50–6–204 provides:

(a)(1) The employer or his agent shall furnish free of charge to the employee such medical and surgical treatment, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus, including prescription eyeglasses and eye wear, such nursing services as ordered by the attending physician and hospitalization, including such dental work made reasonably necessary by accident as herein defined, *as may be reasonably required;* ...

....

(4) The injured employee shall accept the medical benefits afforded hereunder; provided, that *the employer shall designate a group of three (2) or more reputable physicians* or surgeons not associated together in practice if available in that community from which the injured employee shall have the privilege of selecting the operating surgeon or the attending physician; and provided further, that the liability of the employer for such services rendered the employee shall be limited to such charges as prevail for similar treatment in the community where the injured employee resides....

....

(b) Where the nature of the injury or occupational disease, as defined in § 50–6–102, is such that it does not disable the employee but *reasonably requires* medical, surgical or dental treatment or care, medicine, surgery and dental treatment, medicine, medical and surgical supplies, crutches, artificial members, and other apparatus shall be furnished by the employer.

(Emphasis added.)

The Chancellor ordered Frontier to pay the following medical expenses, finding they were reasonable and necessary:

| | | |
|---|---|---|
| Dr. Timothy Schoettle | — | $ 405.00 |
| Howell/Allen Physiotherapy | — | 1,406.95 |
| Radiology Consultants | — | 678.00 |
| Westmoreland Drug Store | — | 336.90 |
| Parkview Hospital | — | 726.20 |

Our examination of the record shows there was proof by Dr. Schoettle of the necessity of the medical expenses incurred, but, except for those expenses provided by Dr. Schoettle, there was no proof of the reasonableness of the plaintiff's medical expenses. On the other hand, Frontier did not comply with the statute by posting a list of three designated physicians, nor did it object to the plaintiff's choice of a physician.

We have held that an employer who attempts to claim the benefits of Tenn.Code Ann. § 50–6–204 must also comply with the statute. *Bond v. American Air Filter,*

692 S.W.2d 638, 641 (Tenn.1985). We have also held that "there should be a presumption that treatment furnished by physicians designated by the employer is necessary and the charges reasonable." *Russell v. Genesco, Inc.*, 651 S.W.2d 206, 211 (Tenn. 1983). Since Frontier failed to designate three approved physicians, the plaintiff was justified in seeking medical treatment from her own physicians. There is no evidence that the charges for the medical treatment rendered by those physicians were unreasonable. Under these circumstances, we find no error in the Chancellor's award of medical expenses to the employee.

## MEDICAL TRAVEL EXPENSE

■ Next, Frontier argues that there was no proof that the medical travel expenses of $1,305.80 were reasonably required, relying on *Wilhelm v. Kern's, Inc.*, 713 S.W.2d 67 (Tenn.1986). Frontier's reliance on *Wilhelm* is misplaced. Wilhelm was a psychiatric patient who was bored in Gatlinburg, decided to move to Alexandria, Virginia, and the Court held the move was not reasonably required under the statute. Here, the record shows the treating physician ordered drugs, therapy, and hospital tests which made certain travel expenses necessary. Based upon the physician's testimony that the medical expenses were necessary, we hold that the travel expenses also were necessary.

## FUTURE MEDICAL EXPENSES

■ Finally, Frontier complains of the Chancellor's award of future medical expenses. Plaintiff's treating physician, Dr. Timothy Schoettle, testified:

Knowing her condition and the course that she has had, I would say that there is a better than 50–50 chance that she in the future may have an exacerbation to such extent that she would require medicals and a medical evaluation. I would say the likelihood is small, probably 20 percent or less, that the condition would progress to the point it would require surgical intervention.

Frontier argues that this proof provides an insufficient basis upon which the Chancel-lor could find, pursuant to Tenn.Code Ann. § 50–6–204(5)(b), that the plaintiff's future medical expenses were reasonably required by plaintiff's condition. The record shows the plaintiff returned to work, with a lifting restriction, after almost three years of treatment for a herniated disc.

We held in *Underwood v. Liberty Mutual Ins. Co.*, 782 S.W.2d 175 (Tenn.1989), that the Chancellor's failure to award future medical expenses for a compensable arthritic hip condition was in error:

If and when the appellant makes application for any such future medical expenses, the trial judge will at that time and under the evidence then adduced, have to determine whether the employer or its insurance carrier is liable therefor.

*Id.* at 176. *See also Shadle v. Amerisure Cos.*, 764 S.W.2d 542 (Tenn.1989), and *Carver v. Sparta Electric System*, 690 S.W.2d 218, 221 (Tenn.1985).

Accordingly, we find the record supports the Chancellor's award of future medical expenses as being reasonably required, and therefore we find no error.

## SET–OFF

■ The employee argues that the Chancellor erred by granting Frontier a set-off of the amount of disability paid by a company disability insurance policy against the temporary total disability benefits awarded. The Chancellor awarded $20,355.80 as temporary total disability benefits, covering a period of 135 weeks and 5 days, but set off against that award the sum of $18,-442.12 paid by Prudential Life and Accident Company to the plaintiff as disability benefits under a company disability policy.

The question whether an employer may set off the amount of short-term disability benefits paid by an employer-funded disability plan, against the employer's statutory worker's compensation liability for temporary total disability benefits, has been addressed by this Court in *Brown v. Western Electric Co.*, 646 S.W.2d 912 (Tenn.1983); *Allen v. Consolidated Aluminum Corp.*, 688 S.W.2d 64 (Tenn.1985); *Lovell v. Metropolitan Government*, 696

S.W.2d 2 (Tenn.1985); and *Williams v. Delvan Delta, Inc.*, 753 S.W.2d 344 (Tenn. 1988).

In both *Brown* and *Williams, supra,* the employers had voluntarily continued paying the employees' full salary, during periods of temporary total disability. Thereafter, the employees sought temporary total disability benefits as part of their worker's compensation claims. "This court held that absent a contract or statute allowing set-off, such payments would be deemed voluntary and set-off would not be allowed [*Brown,* 646 S.W.2d] at 912." *Williams,* 753 S.W.2d at 348.

In *Brown,* we held that "T.C.A. § 50–916 [now T.C.A. § 50–6–114] clearly forbids [reduction] of compensation benefits." *Brown,* 646 S.W.2d at 912. That statute provides:

> No contract or agreement, written or implied, nor rule, regulation, or other device, shall in any manner operate to relieve any employer in whole or in part of any obligation created by this law. . . .

In contrast, in *Allen, supra,* the employee was paid short-term disability benefits pursuant to an employer-funded disability plan which expressly provided "that benefits paid thereunder are to be off set against any worker's compensation payments due appellant for the same disability and for the same period of time." *Id.* at 67. We reasoned that:

> An employee cannot be allowed to *claim* benefits paid by his employer under a contract providing for health care and at the same time be allowed to *disavow* key provisions of the contract. If the employee were permitted to do so, the logical result would be for the employer to *delay* any and all disability payments until it could be judicially determined whether its liability to the employee was under the disability plan contract or under the Worker's Compensation Act. There would be no other way for the employer to avoid the possibility of having to pay twice for the same disability. This procedure would result in a hardship to the employee, and thus defeat the purpose of both the Worker's Compensation Act and the disability plan, as it would inevitably delay payments and thus deprive the employee of sustenance at the time of his greatest need.

*Id.* at 67 (emphasis added).

These issues arise when an employer has offered its employees certain disability benefits over and above those provided by the Worker's Compensation Act. No public policy or statute is offended by the provision of supplemental disability benefits by employers. An employer should be free to make unconditional supplemental payments of benefits, with or without a written contract or disability plan, for which no set-off should be allowed; on the other hand, the parties should be free to contract for the payment of supplemental disability benefits in excess of the statutory requirements, with the condition that the employer is entitled to a set-off. An explicit set-off clause, such as was found in *Allen,* serves this purpose. As with any contract, the intent of the parties as expressed in the language of the agreement controls, so long as no fundamental public policy is offended.

Despite the logic of these principles and the fact that the employer-funded disability plan had no contractual provision permitting a set-off, in *Lovell, supra,* we imposed a set-off:

> Although in this case there is no evidence of a contractual provision relating to set-off, the considerations underlying the decision in *Allen,* . . . apply in the instant case. In both this case and *Allen,* the employer was self-insured. If an employer is not allowed a set-off against worker's compensation judgments for benefits paid by it under self-funded disability plans, the hardship to the employee which we sought to prevent in *Allen* would result.

*Lovell,* 696 S.W.2d at 5. Because we now recognize that the intentions and expectations of the parties as expressed in the employer-funded disability plan contract should control, to the extent *Lovell v. Metropolitan Government,* 696 S.W.2d 2, requires judicial imposition of a set-off where

the parties have not so agreed, that case is overruled.

Returning to the facts of this case, the employee argues that the policy in question expressly provides that there will be no set-off, citing the last paragraph of page 8 of the policy as follows:

> If, after we start paying SIS benefits, social insurance benefits are approved and you receive a retroactive payment, you will not have to return any payments already made by us.

Frontier responds that another section of the policy, which states the manner in which the benefits will be calculated, provides that there will be a set-off for worker's compensation benefits. In the benefits section of the policy, on page 7, the policy provides:

> Monthly payments for total disability will be increased by adding all or one-third of the SIS benefits to your monthly benefit for total disability. We will begin doing this when the SIS benefits start as shown on page 3. The amount to be added to your monthly benefit for total disability will be: 1) the full SIS benefit *for any month for which you do not receive a social insurance benefit* ....

(Emphasis added.)

We find that neither contractual provision expressly provides a right of set-off of worker's compensation benefits against plan benefits previously paid. Consequently, the employee has a contractual expectation interest in the payment of benefits under the disability plan, and a statutory right to the payment of worker's compensation disability benefits, and we hold that the Chancellor erred by allowing the set-off.

### ATTORNEY'S FEES

 Finally, the employee has raised the question of whether the Chancellor properly awarded attorney's fees based on the permanent disability award alone, excluding the temporary total disability award, medical expenses, and mileage expenses. However, this issue was not raised in the trial court, and issues not raised in the trial court cannot be raised for the first time on appeal. *See Lovell v. Metropolitan Government*, 696 S.W.2d 2 (Tenn.1985); *Lawrence v. Stanford*, 655 S.W.2d 927 (Tenn.1983).

### CONCLUSION

It results that the Chancellor's judgment granting the employer a set-off is reversed, but the balance of the judgment is affirmed in all respects. The case is remanded for entry of a judgment consistent with this opinion. Costs of the appeal are taxed to the defendant employer, Frontier Community Credit Union.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ.