IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 18, 2008 Session

## PSALMS, INC. d/b/a  KIRBY PINES ESTATES. v. WILLIAM PRETSCH

**Direct Appeal from the Circuit Court for Shelby County**
**No.  CT-000459-06     Karen R. Williams, Judge**

_____

**No.  W2008-00653-COA-R3-CV - Filed December 31, 2008**

_____

Appellant nursing home appeals the trial court's award of a portion of the damages it sought from Appellee, the son of one of its residents.  The Appellee had previously signed a guaranty to cover expenses that his mother could not meet on her own.  At the initial hearing, Appellant failed to meet its burden of proof concerning damages, and the trial court re-opened the proof on its own motion to allow Appellant more time to produce the missing evidence.  Finding that the trial court abused its discretion in so doing, and that, in the absence of the new proof, Appellant failed to carry its burden, we reverse.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed**

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

C.J. Barnett, Memphis, TN, for Appellant
Paul C. Peel, Memphis, TN, for Appellant

John S. Golwen, Memphis, TN, for Appellee
Colleen D. Hitch, Memphis,  TN, for Appellee

**OPINION**

In 1987, Appellee William Pretsch's parents, William F. and Elizabeth Pretsch, moved into the residential community operated by Appellant Psalms, Inc. d/b/a Kirby Pines Estates ("Kirby Pines").  At that time, Mr. and Mrs. Pretsch asked their son for a letter stating that he would assist with the payment of their bills if necessary.  On July 20, 1987, Mr. Pretsch provided his parents with a handwritten letter (the "July 1987 Letter") that stated, in pertinent part, that he would supplement his parents' monthly income by a minimum of five hundred dollars per month if needed.  On August 7, 1987, Mr. and Mrs. Pretsch executed a Resident Agreement (the "Agreement") with the Appellant. Mr. Pretsch was not a party to this Agreement and testified that he never saw the Agreement prior to its execution by his parents.

According to the record, Kirby Pines offers three types of accommodations: independent living in a "Living Accommodation," assisted living in a "Personal Care Unit," and "Permanent Nursing Care" in a nursing facility. At the time Mr. Pretsch's parents entered Kirby Pines, they resided in independent living. However, the Agreement termed a "life-care contract," entitled Mr. and Mrs. Pretsch to change residences within the various facilities available at Kirby Pines as their health and needs changed. According to the Agreement, Mr. and Mrs. Pretsch were required to submit a deposit of $64,400.00 at the time they entered Kirby Pines. The Agreement also provides that the resident's estate will be entitled to a refund of 50% of the deposit at the time of the resident's death unless the funds have otherwise been exhausted. Under th e Agreement, the resident is entitled to 365 days of "temporary or permanent nursing care." Thereafter, the resident will be required to reimburse Kirby Pines for "temporary or permanent nursing care" from the funds that would otherwise have been returned to the resident's estate.

The Agreement provides that Kirby Pines will conduct an annual review of the applicable insurance policies of each resident. To accomplish this, Kirby Pines sends an annual letter and a survey to the residents requesting updated information. Kirby Pines asserts that, if a resident fails to return the survey, it assumes that there have been no changes to the last information provided.

Appellee's father died in 1994. Prior to that time, Mr. Pretsch asserts that his parents did not share information regarding their finances with him. In fact, Mr. Pretsch states that he did not begin handling his mother's financial affairs until 2000. Mr. Pretsch contends that, from the time he began managing the payment of his mother's account at Kirby Pines, there were "numerous billing problems." Specifically, Mr. Pretsch questioned charges of approximately $400.00 billed by Kirby Pines in 2001. Kirby Pines ultimately retracted this amount from Mrs. Pretsch's bill. In 2003, Mr. Pretsch questioned a $4,000 charge. Following a meeting with Kirby Pines, Mrs. Pretsch was required to pay only $2,500 of the $4,000. Mr. Pretsch asserts that, at this meeting, Kirby Pines assured him that his mother's account was fully paid. However, approximately one month later, Kirby Pines failed to bill some $1,300 in monthly pharmacy charges. This omission went on for approximately three months before Mr. Pretsch contacted Kirby Pines to inform it of the error. Kirby Pines subsequently sent a bill for the charges which was paid in full.

According to Kirby Pines, once Mr. Pretsch began managing his mother's finances, he discovered that his mother had failed to pay the premiums for her supplemental Medicare insurance, which insurance was required under the Agreement. Although Mr. Pretsch attempted to contact the insurance carrier to bring the account up to date and reinstate his mother's insurance, the company allegedly refused. Consequently, Mr. Pretsch attempted to obtain different insurance coverage for his mother, with no success. Kirby Pines contends that Mr. Pretsch did not notify it of the lapse in Mrs. Pretsch's Medicare insurance. The record indicates that the Medicare supplemental insurance covers co-pays that Medicare does not cover. According to the record, Medicare (not Kirby Pines) determines the monetary amount charged for services and co-pays. Residents are responsible for co-pays that insurance does not cover. Kirby Pines has contracted with Rehab Care Works to perform physical therapy for its residents. Rehab Care Works performs the services and then bills Kirby Pines. Kirby Pines pays Rehab Care Works and then bills Medicare. Rehab Care Works charges

Kirby Pines 70% of the Medicare fee schedule on a part B plan. Kirby Pines keeps 30% of the payment from Medicare.

According to Kirby Pines, in 2002, Mrs. Pretsch began receiving physical therapy services and nursing home care and/or assisted living services chargeable under Medicare A and B. In 2002, Mrs. Pretsch incurred $570.90 in Medicare B co-pays. In the same year, her Medicare A co-pays totaled $8,018.50. In 2004, she received Medicare A services and incurred $876.00 in Medicare A co-pays.

In December 2002, Kirby Pines hired Renee Rines as their health care accounting manager. This position had been vacant for some six months prior to Ms. Rines' arrival. Ms. Rines discovered a large backlog of Medicare claims and insurance claims that had not been submitted. In 2003, Ms. Rines discovered the unpaid Medicare claims for Mrs. Pretsch. In 2004, Ms. Rines learned that Mrs. Pretsch's insurance had lapsed. It was at this time that Ms. Rines notified Mr. Pretsch that his mother had an outstanding debt in the amount of $9,465.40. The outstanding charges purportedly arose from physical and occupational therapy services rendered to Mrs. Pretsch. Specifically, Kirby Pines notified Mr. Pretsch that it was seeking to recover the amount of co-payments that would have been paid by the Medicare Supplement had her insurance not lapsed. As noted above, the Agreement requires Ms. Pretsch to carry Medicare Supplemental insurance to cover these amounts; however, the Agreement also requires Kirby Pines to "review the medical and surgical insurance plan of each Resident annually." Although it is undisputed that Mrs. Pretsch's supplemental insurance lapsed in 1994, Mr. Pretsch contends that Kirby Pines' breach of the Agreement in not performing an annual review of his mother's insurance coverage should bar recovery of these charges, especially in light of the fact that Kirby Pines sought recovery of the funds some ten years after the lapse. Kirby Pines also seeks recovery of $876.00 for services allegedly rendered in 2004.

In light of the previous billing errors, Mr. Pretsch was skeptical of the bill he received from Kirby Pines. Wishing to avoid a lengthy dispute, he advised Kirby Pines that it should deduct the amount owed from Mrs. Pretsch's $32,200 refund due from her deposit. At that point, Kirby Pines informed Mr. Pretsch that the deposit had been depleted. This was the first information that Mr. Pretsch received concerning the deposited monies. Mr. Pretsch then requested an itemization of the purported charges pending on his mother's account. According to Mr. Pretsch, this information was not provided, and he did not pay the bill due to his skepticism that the monies were actually owed.

On March 14, 2005, Kirby Pines filed suit against Mr. Pretsch in the General Sessions Court of Shelby County. Kirby Pines alleged that Mr. Pretsch owed it money as the guarantor for services rendered on Mrs. Pretsch's account. Kirby Pines requested judgment in the amount of $11,794.45 (the alleged amount due as of August 31, 2004) plus applicable and accumulated charges from that date. The case was tried on January 12, 2006, and a judgment in the amount of $9,465 was entered in favor of Kirby Pines.

On January 20, 2006, Mr. Pretsch appealed the judgment to the Circuit Court at Shelby County. On January 23, 2006, Kirby Pines appealed the judgment as well, asserting that the amount awarded was too low.

On July 3, 2007, the parties tried the case. At the close of Kirby Pines' proof, Mr. Pretsch moved the court for a "directed verdict" on grounds that: (1) Kirby Pines failed to prove its damages, (2) the claim was time-barred, (3) Kirby Pines failed to review Mrs. Pretsch's insurance on an annual bases, thereby barring recovery, and (4) there was no consideration for the alleged guaranty.[1] The motion was denied. The trial court held that Kirby Pines had not established its damages; however, the court, *sua sponte*, re-opened the proof to allow Kirby Pines twenty days in which to submit proof of its damages. Kirby Pines did submit additional proof post-trial, which linked the billed amounts to Mrs. Pretsch's medical bills. Mr. Pretsch objected to the admission of the new proof, alleging that it was unfair for Kirby Pines to have a "second bite at the apple" after failing to prove its case at trial, and that some of the evidence introduced had never been produced in discovery despite specific requests for it. The additional proof was ultimately allowed, and, on February 26, 2008, the trial court entered Judgment in favor of Kirby Pines in the amount of $876.00. The court's order reads, in pertinent part, as follows:

> This cause of action was tried, without a jury, on July 3, 2007 when the Court adjourned until such time as the Court could review the testimony, exhibits, as well as late filed exhibits requested by the Court. Upon the consideration of the testimony, exhibits, and arguments of counsel for both parties, the Court finds the defendant to be legally bound and obligated to pay any accounts due the Plaintiff and arising from services rendered to the Defendant's mother, Elizabeth Pretsch, under the guaranty letter dated July 20, 1987. However, the court finds that because plaintiff had a duty under its contract to verify that Mrs. Pretsch maintained supplemental med[i]cal insurance on an annual basis, the plaintiff is only entitled to have a judgment against the defendant in the amount of $876.00. This amount was unpaid in 2004 because of the lapse in Mrs. Pretsch's supplemental medical insurance and after all parties w[ere] on notice of that lapse.

Kirby Pines appeals and raises three issues for review as stated in its brief:
    1. Whether the Plaintiff materially breached the Resident Agreement.

---

[1] We note that motions for directed verdicts are made pursuant to Tenn. R. Civ. P. 50 and are appropriate only in jury trials. *City of Columbia v. C.F.W. Constr[.] Co.*, 557 S.W.2d 734, 740 (Tenn.1977); *Scott v. Pulley*, 705 S.W.2d 666, 672 (Tenn. Ct. App.1985); *Roberts v. Robertson County Bd. of Educ.*, 692 S.W.2d 863, 874 (Tenn .Ct. App.1985). They have no place in nonjury trials. *Id*. If a party desires to challenge the sufficiency of the plaintiff's proof in a nonjury trial, it must file a motion for involuntary dismissal at the close of plaintiff's proof pursuant to Tenn. R. Civ. P. 41.02(2).

2. Whether the trial court erred in its decision when the Plaintiff's lack of knowledge of the insurance lapse had no bearing towards provision of the medical services to the Defendant's mother.

3. Whether the trial court erred by essentially allowing the Defendant to utilize his mother's breach of the Resident Agreement as a defense against the Plaintiff's claim.

In the posture of Appellee, Mr. Pretsch raises the following additional issues for review:

1. Whether the trial court erred in allowing Kirby Pines an opportunity post-trial to offer proof of its damages after it failed to introduce sufficient evidence at trial and failed to produce certain of the evidence in discovery?

2. Whether the trial court erred in holding that Kirby Pines' claim was not time barred by the six-year statute of limitations for breach of contract actions?

3. Whether the trial court erred in concluding that the letter authored by Pretsch in July 1987 constituted an enforceable guaranty of amounts owed by Elizabeth Pretsch to Kirby Pines?

4. Whether the trial court correctly concluded that Kirby Pines' conduct prior to 2004 barred it from recovering amounts incurred based on Ms. Pretsch's failure to carry Medicare supplemental insurance?

Tenn.Code Ann. § 16-15-729 (Supp.2007) governs appeals from general sessions court to circuit court, and requires a *de novo* review by the circuit court.[2] As our Supreme court held in ***Ware v. Meharry Medical College***, 898 S.W.2d 181 (Tenn.1995):

De novo appeals from the general sessions court differ from other types of appellate proceedings. The circuit court does not review the general sessions court's decision. Rather, it provides the parties an entirely new trial as if no other trial had occurred and as if the case had originated in the circuit court.

---

[2] The statute reads: "No civil case, originating in a general sessions court and carried to a higher court, shall be dismissed by such court for any informality whatever, but shall be tried on its merits; and the court shall allow all amendments in the form of action, the parties thereto, or the statement of the cause of action, necessary to reach the merits, upon such terms as may be deemed just and proper. The trial shall be de novo, including damages."

*Id.* at 184 (citations omitted).

Consequently, this Court reviews the decision of the circuit court *de novo* upon the record with a presumption of correctness as to the trial court's determination of facts. We must affirm those findings unless the evidence preponderates to the contrary. Tenn. R.App. P. 13(d); *Union Carbide v. Huddleston*, 854 S.W.2d 87, 91 (Tenn.1993).

We will first address Mr. Pretsch's issue of whether the trial court erred in re-opening the proof in this case. As stated by our Supreme Court in *Simpson v. Frontier Community Credit Union*, 810 S.W.2d 147 (Tenn.1991):

> Permitting additional proof, after a party has announced that proof is closed, is within the discretion of the trial court, and unless it appears that its action in that regard has permitted injustice, its exercise of discretion will not be disturbed on appeal...

> It is within the discretion of the trial judge to decide whether to reopen the proof for further evidence, and the decision of the trial judge thereon will not be set aside unless there is a showing that an injustice has been done.

*Id*. at 149 (internal citations omitted).

The abuse of discretion standard requires us to consider: (1) whether the decision has a sufficient evidentiary foundation; (2) whether the trial court correctly identified and properly applied the appropriate legal principles; and (3) whether the decision is within the range of acceptable alternatives. *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App.2000). While we will set aside a discretionary decision if it does not rest on an adequate evidentiary foundation or if it is contrary to the governing law, we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative.

Kirby Pines is seeking payment for amounts that would have been covered by Mrs. Pretsch's Medicare supplemental insurance had it not lapsed. Throughout the course of these proceedings, and in fact prior to the filing of this lawsuit, Mr. Pretsch requested proof connecting the charges to his mother's actual medical bills. Mr. Pretsch is correct that, in order to meet its burden to establish the claimed damages, Kirby Pines must establish that the charges billed were actually incurred for services rendered to Mrs. Pretsch. Moreover, Kirby Pines has the burden to prove that these amounts were billed to Medicare, as well as an itemization of the co-payments associated with each of the services that it was seeking to collect from Mr. Pretsch on behalf of his mother. The record shows that Kirby Pines did not provide this information at the first hearing. Rather, Kirby Pines presented a large volume of Mrs. Pretsch's medical records, along with a single sheet titled "Billing Breakdown," which purports to list the Medicare co-payments allegedly owed by Mrs. Pretsch. However, there was no evidence connecting these charges to the medical records documenting

services rendered.     In the motion for involuntary dismissal, Mr. Pretsch's attorney explains the deficiency in Kirby Pines' proof: "[t]here was no evidence entered, there was nothing entered into evidence explaining, itemizing what those charges are for.  Therefore, they've not shown...the basis for those charges let alone whether they were medically reasonable and necessary."  Counsel for Mr. Pretsch reiterated this point in his closing argument:

> The burden is on [Kirby Pines] to show the charges....  They belatedly produced medical records to substantiate...that there were charges, at least care service rendered.  But, what your Honor has not seen today is any link, look for any numbers on those charts.  There's no numbers.  There's no substantiation on that chart that's right there.  Those numbers, as far as we know, come from out of the air.  And there's got to be documentation supporting where those numbers come from and given the problems in accounting.  It's just problematic that they've not met their [burden] in showing the basis of those numbers here today.

In its statements from the bench, the trial court seems to agree with this argument:

> All right.  I have before me a billing breakdown.  And, I also have data indicating when therapy of one sort or another was given by whom, what was done, what they were trying to accomplish, whether they thought they accomplished it, who ordered it.  I've got all that.  ***The one thing I do not have is the linch pin***.  No one has told me, and apparently no one has told the defendant, the individual charges on a treatment-by-treatment basis that totaled [] $9,465.00.  If it's not in front of me, I don't know about it.  And, it's not in front of me.  I see orders.  There's an order for PT.  I've got all kinds of patient information, but I don't see an ordinary bill....  Quite honestly, I wouldn't pay [the bill] either in this state.

(Emphasis added).

In response to this statement, counsel for Kirby Pines claimed that it had provided supporting documentation to Mr. Pretsch during the course of discovery.  There is no indication, however, that Kirby Pines attempted to move this information into the record at the hearing, a fact that the trial court acknowledges: "That's great.  They [the Defendant] know all about it.  I know nothing about it."  From the trial court's statements and, indeed, from the record itself, it appears that Kirby Pines failed to meet its burden to establish damages in this case.  However, rather than grant Mr. Pretsch's motion for involuntary dismissal, the trial court, *sua sponte*, allowed Kirby Pines additional time to provide the court with the missing information:

> So, here's what I'm going to do. The plaintiff has 20 days to produce the linch pin, and I'll look at it. I will not grant any prejudgment. Because, up until this moment, we still haven't gotten what you required. Sending somebody a nearly $9,500 bill with no back-up two years late, is just not sufficient....

On July 25, 2007, Kirby Pines submitted the additional evidence; on September 27, 2007, Mr. Pretsch filed a written objection to the trial court's consideration of the newly submitted information. The basis for Mr. Pretsch's objection was his allegation that it was unfair for Kirby Pines to have a "do over" or a "second bite at the apple." Furthermore, Mr. Pretsch argued that a portion of the new evidence had not been provided during discovery, although it had clearly been requested.

In ***Rainbo Baking Co. of Louisville v. Release Coatings of Tennessee, Inc.***, No. 02A01-9510-CH-00223, 1996 Tenn. App. LEXIS 767 (Tenn. Ct. App. Dec. 3, 1996), the trial court conducted a bench trial of a case involving claims for negligence and breach of contract. ***Id.*** at *1. After the proof had closed and counsel had completed closing arguments, the trial court held that the plaintiff had established that the defendant was liable, but that the plaintiff had not carried its burden of proof on damages because it had failed to present proof of fair market value. ***Id***. at *5. Rather than ruling for the defendant, or awarding nominal damages, the court stated that it would enter an order of reference to a special master, who would hear evidence from both sides on the issue of fair market value. ***Id.*** at *6. On appeal, this Court held that the trial court abused its discretion in, *sua sponte*, reopening the proof:

> The chancellor has the prerogative within the bounds of discretion to order a reference to a Master. In the case before us, it is not so much the question of the right of the chancellor to order a reference herein that concerns this court as it is that by virtue of ordering such a reference, Rainbo, in effect, received a ***new trial*** or ***another bite at the apple*** because it was allowed to re-present its case regarding the issue of damages after it had previously failed to do so. As noted, there was never a motion by Rainbo to continue the case or reopen the case in order to obtain a second chance to produce proof as to its damages.

***Id.*** at *8-*9 (emphasis added).

In an earlier case, ***Higgins v. Steide***, 335 S.W.2d 533 (Tenn. Ct. App. 1959), this Court determined that, despite the latitude that trial courts have in re-opening the proof, this discretion is not unfettered. In ***Higgins***, counsel for the plaintiff failed to procure the attendance of a witness, because plaintiff's counsel believed that defendant's counsel was going to present the witness. ***Id***. at 540. After the close of proof, but before closing arguments, plaintiff's counsel requested that the trial court re-open the proof so that plaintiff could present the additional witness. ***Id.*** at 534. The trial court granted the motion. ***Id.*** On appeal, this Court held that the trial court had abused its discretion in permitting plaintiff's counsel to present the additional proof because counsel should have obtained the witness earlier if it wished to present the witness at trial. ***Id.*** at 540. Our decision in ***Higgins*** was based primarily upon the following consideration:

> To approve such procedure will establish, in our opinion, such a precedent that could lead to the undue prolongation of the trial in cases to the congestion of court dockets and embarrassment of litigants and trial courts.

*Id.* at 540.

Despite the finding of an abuse of discretion in ***Higgins***, this Court upheld the jury verdict because we did not find that the additional proof had affected the jury verdict. *Id.* The present case is distinguishable in that we are not considering the effect of the testimony of one witness on a jury verdict. This case is more akin to ***Rainbo*** in that the trial court concluded on the record that Kirby Pines had not met its burden of proof on damages after the close of proof. Despite this finding, the Court allowed the proof to be re-opened to allow Kirby Pines to produce the missing "linch pin." The fact that the trial court ultimately awarded damages (which it stated were not proved in the initial offer of proof) necessarily proves that the trial court relied extensively upon the new evidence in reaching its decision. However, the policy considerations at play in ***Higgins*** are, nonetheless, applicable here as well. Throughout these proceedings, Kirby Pines had possession of the very evidence that it failed to produce at the initial hearing. Moreover, because Mr. Pretsch had insisted upon this information all along, and had renewed his concerns in his motion for involuntary dismissal, Kirby Pines was on notice that this information was disputed, and that it would be required to produce the information in order to meet its burden of proof. As in ***Higgins***, we cannot allow a second bite at the apple to a party who failed to introduce necessary evidence during its case-in-chief. To do so would undermine the entire adversarial process. We decline to make such a ruling here.

At the close of the initial proof in this case, the court concluded that Kirby Pines had not met its burden of proof as to damages. From our review of that hearing, we agree. Moreover, we conclude, under the holdings in both ***Rainbo*** and ***Higgins***, that it was an abuse of discretion for the trial court to allow the introduction of additional evidence in this case. Specifically, Kirby Pines exercised control over this information and could have produced it at the initial hearing. Moreover, the trial court's decision to *sua sponte* allow Kirby Pines a second chance to prove its case, and the court's obvious reliance upon the additional proof in reaching its judgment, worked an injustice to Mr. Pretsch. Consequently, we are required to disregard the additional evidence. Based upon the evidence introduced at the initial hearing, we conclude that Kirby Pines failed to prove its damages. We reverse the judgment of the trial court, and dismiss this case. Because of our decision, all remaining issues raised by the parties are pretermitted. The costs of this appeal are assessed against the Appellant, Psalms, Inc. d/b/a Kirby Pines Estates and its surety.

_____
J. STEVEN STAFFORD, J.