**FILED**
**Apr 10, 2025**
**02:26 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| **SHALANDA WHITE,** | ) | **Docket No. 2021-08-1065** |
| **Employee,** | ) | |
| **v.** | ) | |
| **FEDERAL EXPRESS CORP.,** | ) | **State File No. 2571-2021** |
| **Employer,** | ) | |
| **And** | ) | |
| **INDEMNITY INSURANCE** | ) | **Judge Shaterra R. Marion** |
| **COMPANY OF NORTH AMERICA,** | ) | |
| **Carrier.** | ) | |

---

## COMPENSATION ORDER OF DISMISSAL

---

The Appeals Board remanded this case for findings on any remaining issues including medical causation. For the reasons below, the Court holds that Ms. White did not prove medical causation and denies her claim.

### Motion to Reopen

During the compensation hearing, Ms. White made an oral motion to reopen the proof on the issue of maximum medical improvement. The Appeals Board remanded the case, so the Court will treat this as a Rule 7.02 motion. That rule states that "[a]n application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought."

The Court allowed the parties to brief the issue if necessary. After the Appeals Board remanded the case, the Court requested the parties submit briefs, and both parties did.

Ms. White argued that the trial court has discretion to reopen proof, and Federal Express will not be prejudiced. She asks the Court to reopen proof to allow for Dr. Rommel Childress to perform an examination and offer new medical opinions including whether she is at maximum medical improvement.

1

Federal Express argued that it would be severely prejudiced because it would be required to relitigate Ms. White's claim. Further, Ms. White offered no explanation for her failure to get the medical opinion before the compensation hearing.

Permitting additional proof after a party announced that proof is closed is within the discretion of the trial court, and unless it appears that its action in that regard permitted injustice, its exercise of discretion will not be disturbed on appeal. *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 149-150 (Tenn. 1991).

The Court set the first scheduling deadlines on June 21, 2023. On December 14, Ms. White filed a motion for continuance. Federal Express did not oppose the motion if the continuance were short. The Court granted the motion and set new scheduling deadlines requiring medical depositions to be completed by March 4, 2024, and setting the compensation hearing for April 11.

Ms. White did not depose her doctor before March 4, nor did she move for nonsuit or a continuance until April 4. Additionally, Ms. White's attorney failed to appear at the April 3 pretrial conference. The next day, Ms. White filed a motion for voluntary dismissal. One week later, at the compensation hearing, Ms. White's attorney requested the voluntary dismissal be treated as a motion for a continuance, since a motion for summary judgment was pending.

The Court granted the continuance and ordered that the doctor's deposition take place by June 3. Further, the Court ordered that this would be the last continuance granted.

During the continuance, Ms. White received a letter from Dr. Childress, who said that he had not assigned maximum medical improvement. At the May 22, 2024 deposition, Dr. Childress could not say whether Ms. White was at maximum medical improvement without reexamining her. The examination did not occur, and the compensation hearing went forward as scheduled on July 16.

Ms. White does not explain why she did not return to Dr. Childress after the May 17 letter or the May 22 deposition. Additionally, the Court previously granted a continuance for Ms. White to secure medical proof. For these reasons, the motion to reopen proof is denied.

**Claim History**

On November 2, 2020, Ms. White felt "burning" and "heaviness" in her knees after stepping down from machinery at work. She said she took a couple of steps and could not move, requiring a coworker to help her into a vehicle.

Ms. White treated conservatively with her primary care physician, and when that didn't work, she saw Dr. Childress. He diagnosed degenerative joint disease in her knee that was aggravated by her work activities and obesity. He never placed her at maximum medical improvement and believed she would more likely than not need a total knee replacement at some point in the future.

In his deposition, Dr. Childress testified that Ms. White's work caused her aggravation based on "her description of what she did at work." He also said that if her description didn't match her actual job duties "it could" change his opinion on causation. He "would need to know what needs to be corrected in terms of [him] being knowledgeable of exactly what she did in terms of hours and exposure."

Dr. Jeffrey Dlabach performed an employer's exam of Ms. White. He concluded that morbid obesity, not the work injury, more than 50% caused her knee arthritis, which had been progressing over many years. He further explained that although her knees may hurt at work, work did not cause her knees to hurt. She could go somewhere else and walk a lot, and her knees were going to hurt because of the arthritis.

Ms. White testified that she worked as a team leader on offload duty—unloading cargo from planes—since 2012. Her employees usually offloaded the planes, two or three per shift, but she helped where needed. She also said she gave Dr. Childress a detailed description of job duties that she performed. Her written description of her job duties included in relevant part:

Area- Non-con[1]
-Lifting over 75lbs, carrying it 10ft for 5 to 8 hours
-Lifting over 150lbs with one other carrying it 10ft for 5 to 8 hours
-Walking and standing on an iron catwalk while lifting 40 to 50lbs mail and document bags up 2ft lifting over chest height. For 5 to 7 hours
-pushing up to 150lbs 30ft on a conveyor belt

Area- Input
-Walking and standing from metal floor transitioning to an iron catwalk carrying, pulling and pushing up to 100lbs 5ft. 5 to 7 hours a day
-Walking carrying 20lbs to 30 lbs. mail and document bags from metal floor to iron catwalk lifting up to 2ft overhead 6 to 8 hours a day
-Climbing 2½ feet high onto a vehicle one step for 5 to 7 hours 5 days a week

Area- Offload
-climbing one flight of metal stairs (up and down) from 6 to 9 hours 5 days a week

---

[1] "Non-con" stands for "non-conveyable packages," which required special sorting.

-standing on the iron floor when operating machines 6 to 8 hours 5 days a week
-On my knees crawling around (some metal floors) in a small airplane compartment pulling and pushing 5 to 150lbs bags and/or boxes, car parts, plane parts, appliance parts etc. out onto a conveyor belt 30 ft in air That is going downward.
-pushing and pulling 275lbs. Uphill and/or downhill alone (on metal floors and metal rollers)
-With one other person turning 180 degrees, pushing and pulling uphill and/or downhill up to 10,000 lbs (one metal floor and metal rollers)

David Kirby, a senior manager at Federal Express, oversaw Ms. White's team and 17 others. He would observe each team nightly, with a focus on teams that had problems. He testified that Ms. White's team did not have problems. He also testified that Ms. White's description of her job duties was incorrect.

For "noncon," Mr. Kirby said Ms. White's assertions of lifting over 75 pounds and 150 pounds were incorrect because the heaviest noncon package weighed between 70 and 75 pounds, and that package would be lifted in tandem with another employee. He also stated that 90-95% of noncon packages weighed less than 25 pounds, and if any package weighed over 150 pounds, the employees knew not to lift it.

Additionally, Mr. Kirby testified that Ms. White would not be lifting packages for six to eight hours, because employees only spent two and a half hours sorting planes each shift. He stated that employees would normally sort packages between 11:00 p.m. and 2:07 a.m. the next morning.

For "input," Mr. Kirby likewise testified that Ms. White could not be carrying packages for five to seven hours a day because each employee only sorted for two and a half hours each shift. Additionally, he said she could not have been constantly climbing for five to seven hours a day because of the sort span.

For Ms. White's duties as offload team lead, Mr. Kirby also disagreed with the duties as she described them. He testified that the team lead may do some of the team member actions, "but for the most part the team leader is directing the actions of the team." The team lead focuses on what comes off the plane and directs the team members to sort the packages. He said that on a typical shift the team spends 75% of their time waiting for a plane assignment. He also stated that her description of pushing up to 150-pound bags could not be true because "you don't put 150 pound-anything on the aircraft."

Finally, Mr. Kirby stated that offloading a plane takes 30-40 minutes and then the team waits for its next assignment, doing a total of three offloads per shift. Similarly, she would not be operating machines for six to eight hours.

4

Ms. White, in her rebuttal testimony, reiterated that her job duty description was accurate. She said that her team was short-staffed, so the team leads regularly had to operate machinery and pull packages off planes. She disagreed with Mr. Kirby that noncons didn't weigh more than 75 pounds. She also opposed Mr. Kirby's testimony, and her own earlier testimony, by saying that she would load and unload as many as five planes on a shift.

**Findings of Fact and Conclusions of Law**

Ms. White has the burden of proof on all essential elements of her claim and must show by a preponderance of the evidence that she is entitled to the requested benefits. Tenn. Code Ann. § 50-6-239(c)(6) (2024); *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015). She failed to carry her burden.

Ms. White's claim asserts an aggravation of a preexisting arthritic knee condition. Proving her work caused the aggravation presents a substantial burden requiring specific medical opinions based on accurate information concerning her job duties.

A compensable injury does not include the aggravation of a preexisting condition "unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(12)(A) (2025). A reasonable degree of medical certainty means that "in the opinion of a physician, it is more likely than not considering all causes" that the work injury caused the aggravation. § 50-6-102(12)(C).

Medical opinions based on an inaccurate history do not support findings of causation. The Tennessee Workers' Compensation Panel held that an opinion based on a faulty hypothetical on the extent of repetitive use of the employee's hands could not form the basis of a valid causation opinion. *Hamilton v. Danka Indus., Inc.*, No. 02S01-9806-CH-00051, 1999 Tenn. LEXIS 398, at *12-13 (Tenn. Workers' Comp. Panel July 30, 1999). Similarly, the Panel gave greater weight to a treating physician instead of evaluating physicians who "relied on [an] inaccurate medical history provided by the employee." *UPS v. Cameron*, No. E2013-02001-SC-R3-WC, 2014 Tenn. LEXIS 609, at *16 (Tenn. Workers' Comp. Panel Aug. 15, 2014).

Here, Dr. Childress based his causation opinion on the job duties that Ms. White gave him. The testimony conflicted about those job duties.

Generally, Ms. White's written job duties painted a picture of heavy lifting and moving for six to eight hours per shift, five days a week. Mr. Kirby testified that her work predominantly consisted of overseeing her team members, and even if she did the team member work, the heavy lifting and moving took place at most two and a half hours each shift, by unloading three planes per shift.

Ms. White, in her rebuttal testimony, did not directly contradict Mr. Kirby's testimony about how much time she spent per shift doing heavy lifting and moving. She did state that she would load or unload up to five planes per shift, but using the math that her team unloaded three planes in two and a half hours, five planes would only constitute around four hours per shift. This still does not reach the six to eight hours that she portrayed to Dr. Childress. Also, Ms. White contradicted her own testimony, when she said she unloaded three planes per shift, which agreed with Mr. Kirby's testimony.

The Court finds, based on the testimony of Ms. White and Mr. Kirby, that Ms. White did not provide an accurate history to Dr. Childress. Dr. Childress therefore did not give a valid causation opinion, because he stated his opinion was based on "her description of what she did at work."

Both doctors agreed that her obesity contributed to her knee injuries. Dr. Childress based his opinion on the incorrect work history. Therefore, the Court finds Dr. Dlabach more persuasive by a preponderance of the evidence.

Because Ms. White did not prove medical causation, the Court holds that she did not carry her burden of proving that her knee injury arose out of and in the course and scope of her employment and denies the claim.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. White's claim is dismissed with prejudice.

2. The Court taxes the $150.00 filing fee to Federal Express, to be paid to the Court Clerk within five business days of this order becoming final, and for which execution might issue if necessary.

3. Federal Express shall prepare and submit to the Court Clerk a Statistical Data Form (SD2) within 10 business days of this order becoming final.

4. Unless appealed, this order shall become final 30 days after issuance.

**ENTERED April 10, 2025.**

_____

**JUDGE SHATERRA R. MARION**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Deposition of Dr. Rommel Childress with Attached Exhibits
2. Deposition of Dr. Jeffrey Dlabach with Attached Exhibits
3. Email dated December 18, 2020, from Ms. White to Londell Owens
4. Stipulation of the Parties as to Credit Owed Employer
5. Description of Job Duties Created by Ms. White

**CERTIFICATE OF SERVICE**

I certify that a copy of the order was sent as shown on April 10, 2025.

| Name | Email | Service sent to: |
|---|---|---|
| Christopher Taylor, Employee's Attorney | X | ctaylor@taylortoon.com |
| Stephen P. Miller, Employer's Attorney | X | smiller@mckuhn.com<br>mdoherty@mckuhn.com |

_____

**PENNY SHRUM, COURT CLERK**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

7



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    ➤ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    ➤ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

    **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____          ☐ Motion Order filed on _____

☐ Compensation Order filed on_____          ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*