**FILED**
**Sep 17, 2025**
**11:09 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Anait Sudzhyan | Docket No. 2024-60-6879 |
| v. | State File No. 11285-2024 |
| YMCA of Middle Tennessee, et al. | |
| Appeal from the Court of Workers' Compensation Claims Joshua D. Baker, Judge | |

---

### Affirmed and Remanded

---

In this interlocutory appeal, the employer challenges the trial court's order compelling it to authorize a psychiatric evaluation and treatment with a specialist from whom the employee had sought unauthorized care. The employee alleged injuries as a result of two incidents while working in the course and scope of her employment as a childcare provider. The employer provided the employee a panel of physicians, and the employee selected a treating physician who, in turn, referred the employee to a psychiatrist for further evaluation and treatment. The employer declined to authorize that referral, and the employee sought treatment from a psychiatrist recommended by her primary care physician. Following an expedited hearing, the trial court ordered the employer to authorize further evaluation and treatment with the employee's current treating psychiatrist, and the employer has appealed. Having carefully reviewed the record, we affirm the trial court's order and remand the case.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge Pele I. Godkin and Judge Meredith B. Weaver joined.

Gordon Aulgur, Lansing, Michigan, for the employer-appellant, YMCA of Middle Tennessee

Anait Sudzhyan, Nashville, Tennessee, employee-appellee, pro se

### Factual and Procedural Background

Anait Sudzhyan ("Employee") was a childcare worker employed by YMCA of Middle Tennessee ("Employer"). Employee's responsibilities included caring for special

needs children. On February 12, 2024, Employee was working for Employer at Westmeade Elementary School when she reported being "attacked" by a child who pushed her and pulled her hair. Later that same day, as she was supervising a group of children in the gymnasium, a child accidentally struck her forcefully on the left side of her head with a basketball. She reported both incidents to her supervisor.

In response to Employee's reporting of the work incidents, Employer completed an internal injury report and provided Employee a panel of physicians. She selected the Vanderbilt Walk-In Clinic, where she was seen the following day. In the report from that visit, the provider noted that Employee complained of moderate headache pain, neck pain, low back pain, and ringing in her right ear. She informed the provider of her preexisting anxiety diagnosis and identified her anxiety medications, and the provider noted she was "nervous/anxious" during the visit. A CT of the head revealed "no acute intercranial findings."

On that same day, Employee also sought treatment at Ascension Saint Thomas Medical Center ("Ascension").[1] A record of a message Employee apparently entered in her online health portal following that visit indicates Employee complained of "way more job related panic attacks than before." She was taken out of work by Dr. Brent Coil at Ascension, who indicated she could return to work on February 19.

Employee returned to Vanderbilt Walk-In Clinic the following week and was seen by Dr. Aleksandra Frye. Dr. Frye noted certain neurological symptoms, including continued headache, trouble concentrating, memory loss, dizziness, and disorientation. Employee also reported ongoing ringing in her right ear. Dr. Frey recommended Employee stay out of work until she could be evaluated by a neurologist.

Employer provided a panel of neurologists, and Employee selected Dr. Garrison Strickland. Meanwhile, in March, Employee was seen again at Ascension with complaints of "headaches, ringing in right ear, and memory loss." The March 11 report from Ascension also indicates that Employee reported that "stress has been causing BP to drop quickly then rise too high." The provider, Dr. John Williams, counseled Employee on her medication regimen and "the importance of maintaining a healthy diet, exercise routine, and monitoring her blood pressure regularly." Employee returned to Ascension in May with continued complaints of anxiety and memory problems. There were no changes in her treatment plan at that time. Following her visit in June, however, Dr. Williams discussed the possibility of a depressive disorder and/or a concussion. On July 15, Dr. Williams diagnosed Employee with post-concussion syndrome and recommended a referral to a psychologist.

---

[1] None of Employee's treatment at Ascension was authorized by Employer.

Employee was first seen by Dr. Strickland on July 8, 2024.  Employee described the work incidents to Dr. Strickland and stated that her preexisting anxiety was "worse now."  She also reported chronic headaches, difficulty concentrating, and forgetfulness.  Dr. Strickland prescribed Neurontin and ordered a brain MRI.  With respect to her anxiety complaints, Dr. Strickland stated, "[a]nxiety was pre-existing and such an injury which she described would not be expected to cause long-standing change in anxiety."  He then stated, "I would have expected symptoms to resolve within 1-2 months following injury."  He asked Employee to return after the MRI to review the results.

Employee continued seeing various providers at Ascension regularly.  On August 1, Employee was diagnosed with generalized anxiety disorder and post-concussion syndrome.  She returned to Ascension twice in the following two weeks and, in an August 21 report, Dr. Williams stated:

> During the consultation, it bec[ame] evident that the patient suffers from significant PTSD, as evidenced by her overwhelming anxiety and functional impairments . . . . The patient also suffers from arthritis and unspecified cognitive impairments possibly linked to a past head injury.

Dr. Williams discussed adding Ketamine to her medication regimen.  He also completed a "Fitness for Duty Certification" on that date and indicated employee could not return to work without restrictions until October 21, 2024.  Under additional comments, he wrote, "work related injury complications from concussion."  Further, in a September 9 report, Dr. Williams stated that Employee "presents with a complex interplay of psychological distress manifesting both cognitively and physically."  He also mentioned "personal and significant life stressors."

During this time, Employee obtained a referral from her primary care physician to see Dr. Tianlai Tang, a psychiatrist at the Nashville Brain Institute.  She first saw Dr. Tang on August 16, 2024, and reported "high anxiety and panic attacks" as well as "cognitive impairment."  Dr. Tang diagnosed post-traumatic stress disorder ("PTSD"), panic disorder, and anxiety disorder.  He recommended cognitive function testing to assess for dementia.

When Employee returned to Dr. Strickland on September 11, he noted that the MRI of Employee's brain showed "no significant abnormalities."  Employee also informed Dr. Strickland that she could not tolerate the Neurontin.  Dr. Strickland concluded that there were no objective signs of a brain injury and that "[h]er primary difficulty is psychiatric in nature."  As a result, Dr. Strickland referred her to a psychiatrist and "advised her to be off work until she sees a psychiatrist."

Employee returned to Dr. Tang on October 14 with complaints of "frequent panic attacks and brain fog."  Dr. Tang commented that the work-related accident had "exacerbated her [pre-]existing anxiety."  Employee also reported symptoms that Dr. Tang

described as consistent with obsessive compulsive disorder and post-traumatic stress disorder. Dr. Tang reiterated his recommendation for cognitive testing.

Employee filed a petition for benefit determination in October 2024 asking the court to order Employer to authorize psychiatric treatment. Following unsuccessful mediation, the court scheduled an expedited hearing for May 2025. During that hearing, Employee testified her primary language is Armenian, but she also speaks English. Approximately ten years previously, her husband passed away unexpectedly after they had moved to the United States with their two sons. After her husband's death, she suffered periods of anxiety. However, she testified she then graduated from college and was working at the LASIK Vision Institute as a surgical assistant. Later, she decided to start working with children, which led to her job with Employer. She emphasized repeatedly during her direct testimony that the incidents she reported on February 12, 2024, had worsened her mental state and preexisting anxiety.

One of her sons, Ruben Tavakalov, also testified at the expedited hearing. He was deployed in the military when the incidents occurred. However, he was granted "emergency leave" to return to Nashville after the work incidents. When questioned by Employee about her condition, Mr. Tavakalov testified as follows:

> I saw that you were no longer the same. Your, your memory was not the same, and I couldn't understand how you've changed so much. Because the last time I saw you was in December . . . of 2023. So, when I physically saw [you,] you seemed more discombobulated just . . . throughout the day.

During her cross examination, Employee acknowledged she had previously been diagnosed with anxiety following her husband's death, but she maintained that her anxiety "got significantly worse" after the work-related incidents.

For its part, Employer acknowledged during the expedited hearing that it was not contesting the compensability of the work-related incidents. However, it maintained that Employee is not entitled to psychiatric treatment because she admitted her anxiety condition preexisted the work incidents. It also relied on Dr. Strickland's statement in the July 2024 medical report indicating that Employee's anxiety was preexisting and that any psychiatric symptoms caused by the work-related incidents should have resolved.

Following the expedited hearing, the trial court issued an order compelling Employer to authorize additional treatment with Dr. Tang as Employee's authorized treating psychiatrist. In addition, although the trial court concluded Employee was likely to prevail in her claim for additional temporary disability benefits, it found there was insufficient evidence in the record to calculate such an award, and it denied that claim. Employer has appealed.

4

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2024). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2024).

## Analysis

### *Psychiatric Referral*

It is well established that, when an employee reports a work-related accident and expresses a need for medical care, an employer generally is obligated to provide a panel of physicians for authorized medical treatment. *See, e.g.*, *Rhodes v. Amazon.com*, No. 2018-01-0349, 2019 TN Wrk. Comp. App. Bd. LEXIS 24, at *13 (Tenn. Workers' Comp. App. Bd. June 11, 2019). Moreover, we have previously concluded that an employee need not appreciate the extent or nature of every injury that arose primarily from a work accident to qualify for benefits for such an injury. *See, e.g.*, *Sullivan v. Petree Arbor Lawn & Landscape, Inc.*, No. 2023-03-8156, 2024 TN Wrk. Comp. App. Bd. LEXIS 43, at *11 (Tenn. Workers' Comp. App. Bd. Nov. 13, 2024).

Further, an employer may be required to authorize treatment for a condition that preexisted the work accident in certain circumstances. According to Tennessee Code Annotated section 50-6-102(12), which defines the terms "injury" and "personal injury," a compensable injury "shall not include the aggravation of a preexisting disease, condition, or ailment *unless* it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(12)(A) (emphasis added). In addition, at an expedited hearing, an employee need not prove every essential element of her claim by a preponderance of the evidence but must come forward with sufficient proof to convince the court she "would likely prevail" on that issue at trial. Tenn. Code Ann. § 50-6-239(d)(1); *see also Foster v.*

*Andy Frain Services, Inc.*, No. 2018-08-0237, 2019 TN Wrk. Comp. App. Bd. LEXIS 10, at *7 (Tenn. Workers' Comp. App. Bd. Mar. 5, 2019).

Treatment recommended by an authorized treating physician is presumed to be medically necessary as a result of the work accident. Tenn. Code Ann. § 50-6-204(a)(3)(H). Moreover, an authorized treating physician may refer an injured employee to a specialist physician for further treatment. Tenn. Code Ann. § 50-6-204(a)(3)(A)(ii). In such circumstances, if the authorized treating physician has made a referral to a specific specialist, the employer can accept that referral, or it can offer the employee a panel of specialists for selection of a provider. *Id.* Once that employee begins seeing the new physician, that physician "shall become the treating physician" until that specialist physician refers the employee back to the original authorized physician. Tenn. Code Ann. § 50-6-204(a)(3)(E). Finally, Tennessee's law provides that "[a]ll psychological or psychiatric services . . . shall be rendered only by psychologists or psychiatrists and shall be limited to those ordered upon the referral of physicians authorized under subdivision (a)(3)." Tenn. Code Ann. § 50-6-204(h). Thus, an injured worker is not entitled to receive a panel of psychologists or psychiatrists for authorized treatment following a work injury unless a physician previously authorized to treat the employee makes such a referral. *See Montgomery v. Mitchell Industrial Tire Co.*, No. 2017-01-0884, 2019 TN Wrk. Comp. App. Bd. LEXIS 32, at *11 (Tenn. Workers' Comp. App. Bd. July 17, 2019).

In *Burnette v. WestRock*, No. 2016-01-0670, 2017 TN Wrk. Comp. App. Bd. LEXIS 66 (Tenn. Workers' Comp. App. Bd. Oct. 31, 2017), we addressed the consequences of an employer's decision to deny medical treatment:

> It is a long-settled principle of Tennessee's workers' compensation law that an employer who does not timely provide a panel of physicians risks being required to pay for treatment an injured worker receives on his or her own. "[A]n employer who attempts to claim the benefits of [Tennessee Code Annotated section] 50-6-204 must also comply with the statute." *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 150 (Tenn. 1991). The Tennessee Supreme Court has addressed the issue as follows:

> > Where the employer fails to give the employee the opportunity to choose the ultimate treating physician from a panel of at least three physicians, the employer runs the risk of having to pay the reasonable cost for treatment of the employee's injuries by a physician of the employee's choice. Since [the employer] failed to designate three approved physicians, the [employee] was justified in seeking medical treatment elsewhere. [The employer] knew about the [employee's] injury and knew that he was seeking medical care.

6

*Lindsey v. Strohs Cos.*, 830 S.W.2d 899, 902-03 (Tenn. 1992) (citations omitted). Furthermore, a belated attempt to insist that an injured worker treat with a panel physician after the worker has established a doctor-patient relationship with another physician will not succeed, at least when the employer has pointed to no rationale to require the change in physicians other than an assertion of its statutory right. *See, e.g.*, *Goodman v. Oliver Springs Mining Co.*, 595 S.W.2d 805, 808-09 (Tenn. 1980).

*Id.* at \*11-12.

In the present case, the critical issues are: (1) whether an authorized treating physician referred Employee for psychological or psychiatric treatment; and (2) whether the trial court erred in ordering Employer to authorize such treatment. The record reflects two physicians who were authorized to treat Employee following the work-related incidents: Dr. Frye at Vanderbilt Walk-In Clinic and Dr. Strickland, the authorized treating neurologist. The record does *not* indicate that Dr. Williams or any other physician at Ascension was authorized to treat Employee. Moreover, neither Employee's primary care physician nor Dr. Tang was authorized to treat Employee under subsection 204(a)(3).

We addressed strikingly similar issues in *Gautreaux v. Hermitage Hall*, No. 2018-06-0366, 2019 TN Wrk. Comp. App. Bd. LEXIS 12, at \*18 (Tenn. Workers' Comp. App. Bd. Mar. 12, 2019). In that case, the employee worked in a residential group home for teens. *Id.* at \*1. On several dates identified by the employee, she reported being attacked by some of the residents, including having her hair pulled, being kicked, and being hit in her head, resulting in concussion-like symptoms. *Id.* at \*2-3. She was referred to a neurologist and began treating with Dr. Strickland. *Id.* at \*4. Following a series of diagnostic tests, Dr. Strickland concluded she had "no evidence of a brain injury." *Id.* at \*5. However, the employee continued to complain of headaches, memory loss, dizziness, bouts of crying, and cognitive difficulty. *Id.* at \*5-6. As a result, Dr. Strickland referred the employee for both psychiatric and psychological care. *Id.* at \*7.

The employer in *Gautreaux* declined to authorize psychiatric or psychological care for the employee, arguing there was insufficient proof that the employee's mental condition was primarily caused by the work-related events. *Id.* at \*10-11. Following an expedited hearing, the trial court ordered the employer to authorize the treatment recommended by Dr. Strickland. *Id.* at \*15. In affirming that decision on appeal, we explained, in part:

An employer takes an employee "as is" and assumes the responsibility of the employee having a pre-existing condition aggravated by a work-related injury that might not affect an otherwise healthy person. An employer may be liable for disability resulting from injuries sustained by an employee arising out of and in the course of his employment even though it aggravates a previous condition with resulting disability far greater than otherwise

7

> would have been the case. Benefits may be ordered at an expedited hearing if the employee comes forward with sufficient evidence indicating a likelihood of proving at trial that the aggravation arose primarily out of and in the course and scope of employment.

*Id.* at *19 (internal quotation marks and citations omitted).

Here, as in *Gautreaux*, Dr. Strickland initially evaluated Employee for neurological symptoms and concluded there was no evidence of an anatomic brain injury. Here, as in *Gautreaux*, Dr. Strickland eventually referred Employee for psychiatric evaluation and/or treatment. Here, as in *Gautreaux*, Employer declined to authorize that referral. The only significant difference between the expert medical proof in *Gautreaux* versus the proof in the present case is that, here, Dr. Strickland commented in his July 2024 report that he would not expect her mental symptoms to persist for more than 1-2 months. Yet, there is no dispute that Dr. Strickland is not a psychiatrist; therefore, he could not provide psychiatric care, and his opinions regarding the anticipated duration of her psychiatric symptoms are of limited value. *See* Tenn. Code Ann. § 50-6-204(h). There is also no dispute that, in his September 2024 report, he "referred her to a psychiatrist for further evaluation and treatment." Thus, we agree with the trial court that there is sufficient evidence in this record to support a finding that Employee is likely to prevail at trial in proving she suffered a compensable aggravation of her preexisting mental condition that arose primarily out of the work-related incidents. Because an authorized treating physician referred Employee for psychiatric care, as required by subsection 204(h), Employer is obligated to provide it.

*Identification of Authorized Psychiatrist*

In its notice of appeal, Employer asserted the trial court erred "when it ordered Employer to provide a panel of physicians," and it stated in its brief that "a panel was not owed to Employee." Yet, in its expedited hearing order, the court ordered Employer to "furnish a psychiatric evaluation and treatment from Dr. Tang as the authorized treating physician." These statements do not accurately reflect the trial court's order.

In its brief, Employer argued that Dr. Strickland affirmatively determined that Employee's psychiatric condition was not only preexisting, but that it was not causally related to or aggravated by the work-related incidents. We disagree with Employer's characterization of Dr. Strickland's statements. In fact, we find no direct statement in Dr. Strickland's reports addressing causation. In his July 8, 2024 report, Dr. Strickland noted Employee's complaint that her preexisting anxiety was "worse now." He then stated that he "would have expected symptoms to resolve within 1-2 months following injury." Yet, Dr. Strickland did not address whether the work-related incidents caused an aggravation of Employee's preexisting mental condition. Then, in his September 11, 2024 report, Dr. Strickland again noted that her primary complaint is "anxiety and panic attacks." He

8

concluded that "her primary difficulty is psychiatric in nature," and he referred her to a psychiatrist "for further evaluation and treatment." At no point in his September 11 report did Dr. Strickland state that her current need for psychiatric treatment was unrelated to the work incidents. Thus, we conclude Employer has mischaracterized these statements as a "causation opinion."

Here, Employee began seeing Dr. Tang before Dr. Strickland had made a referral to a psychiatrist. The record reflects that she saw Dr. Tang once before Dr. Strickland's referral and once after. The trial court did not specifically address whether Employee had established a doctor-patient relationship with Dr. Tang sufficient to support its order that Dr. Tang be deemed an authorized treating physician. Although Employee originally asked for a panel of psychiatrists during the expedited hearing, she argued in her brief on appeal that the court's designation of Dr. Tang as her authorized psychiatric provider was "the correct legal remedy." In addition, Employer's brief on appeal only addresses whether the recommended psychiatric treatment was causally related to the incidents at work; it did not address what remedy was appropriate if the court determined Employee was entitled to such treatment. Employer did not ask us to reverse the trial court's order for continued treatment with Dr. Tang specifically, and it did not ask, in the alternative, that it be allowed to provide a panel of psychiatrists in lieu of authorizing additional treatment with Dr. Tang. Given our conclusions as noted above, therefore, we affirm the trial court's order for a psychiatric evaluation with Dr. Tang. If Dr. Tang concludes that Employee's current need for psychiatric treatment arises primarily from the work-related incidents, that determination is entitled to a presumption of correctness in accordance with Tennessee Code Annotated section 50-6-204(a)(3)(H), and it will be Employer's obligation to either authorize such treatment or produce sufficient expert medical proof to rebut the presumption.

*Temporary Disability Benefits*

Finally, in its notice of appeal, Employer argues the trial court "erred when it ordered back TTD." Although the court concluded Employee "is likely to prevail on temporary disability benefits at a final hearing," it then noted that Employee had not presented sufficient evidence to calculate any such award, and it stated that Employee's "request for an award of temporary disability benefits *is denied at this time*." (Emphasis added.) Thus, contrary to Employer's assertion, the court did *not* order "back TTD."

Moreover, with respect to the trial court's interlocutory determination that Employee is likely to prevail in proving entitlement to additional temporary benefits at trial, we have previously noted that "a trial judge's determinations at an interlocutory hearing are subject to change at any time prior to the entry of a final compensation order." *Simpson v. City Auto, LLC*, No. 2017-08-0805, 2018 TN Wrk. Comp. App. Bd. LEXIS 30, at *13 (Tenn. Workers' Comp. App. Bd. June 13, 2018). Given that the court specifically *denied* Employee's claim for temporary disability benefits at the expedited hearing, there

has been no award of additional temporary benefits. Either party may present any admissible evidence it may choose to present at a later hearing regarding this issue, and the trial court is not bound by any previous statement addressing Employee's entitlement to any such benefits. Hence, this issue is without merit.

## Conclusion

For the foregoing reasons, we affirm the trial court's order and remand the case. Costs on appeal are taxed to Employer.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

Anait Sudzhyan

v.

YMCA of Middle Tennessee, et al.

Appeal from the Court of Workers'
Compensation Claims
Joshua D. Baker, Judge

Docket No.  2024-60-6879

State File No.  11285-2024

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 17th day of September, 2025.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Gordon Aulgur | | | | X | gordon.aulgur@afgroup.com samantha.gutierrez@afgroup.com |
| Anait Sudzhyan | | | | X | sudzhyan.anna@gmail.com |
| Joshua D. Baker, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Matthew Keene
Acting Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-532-1564
Electronic Mail: WCAppeals.Clerk@tn.gov